As to liability of stockholders, see Haskins v. Harding [Case No. 6,196]; Ashton v. Burbank [Id. 582].

PAYSON (UNITED STATES v.). See Cases Nos. 16,015–16,017.

## Case No. 10,864.

### PAYSON v. WITHERS.

[5 Biss. 269;[1] 2 Ins. Law J. 599; 5 Chi. Leg. News, 445.]

Circuit Court, D. Indiana. May Term, 1873.

LIABILITY OF STOCKHOLDERS — STATEMENTS MADE BY AGENTS—SOLICITING SUBSCRIPTIONS NOT ILLEGAL — INCREASE OF STOCK — EFFECT ON SUBSCRIPTION—LEX LOCI—ESTOPPEL.

1. In an action against a stockholder, brought by the assignee of a bankrupt insurance company, to recover an assessment on stock, it is not a sufficient defense to show ignorance on the part of the defendant as to the condition and circumstances of the company when his subscription was taken.

2. Statements made by agents of the company do not affect the liability of the defendant, as loose declarations made at the time cannot change a written contract.

3. The soliciting of subscriptions to the capital stock of a foreign corporation is not an act or agreement intended to be rendered inoperative by the act of June 17, 1852, of the state of Indiana.

[Cited in Lamb v. Lamb, Case No. 8,018.]

4. Where it is provided in the charter of a corporation that "the capital stock shall be $1,000,000, and may be increased to not exceeding $5,000,000, at the discretion of the stockholders," and where an amendment is made which declares "that the board of directors shall have power to increase the capital stock of said company, from time to time, in their discretion," a subsequent increase of the capital stock will not invalidate a subscription to the capital stock made previous to the passage of the amendment, and it makes no difference that the increase was made by the board of directors instead of the stockholders.

[Cited in Payson v. Stoever, Case No. 10,863.]

5. Every stockholder takes his shares subject to the lawful control of the legislature and of the board of directors.

6. Where a citizen of one state makes a contract to be executed in another he is bound by

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

the laws of the state where the contract is to be performed.

[Cited in Nimick v. Mingo Iron Co., 25 W. Va. 199. Cited in brief in Wilson v. St. Louis & S. F. Ry. Co., 108 Mo. 588, 18 S. W. 290.]

7. A stockholder who retains his stock, and continues to participate in the profits of the corporation without denial of his membership, cannot successfully repudiate his contract, holding that he is not obliged to pay an assessment upon the ground of certain irregularities in the increase of the capital stock of the corporation.

[Cited in Clarke v. Thomas, 34 Ohio St. 63; Duffield v. E. T. Barnum Wire & Iron Works, 64 Mich. 301, 31 N. W. 314.]

This was an action by Joseph R. Payson, assignee of the Republic Fire Insurance Company of Chicago, Illinois, against Warren H. Withers, to recover an assessment of $60 made on each of the ten shares of capital stock of the said insurance company held by him.

Baker, Hord & Hendricks and Charles E. Marsh, for plaintiff.

Morris & Withers, McDonald & Butler, Harrison & Hines, and W. H. Calkins, for defendant.

DRUMMOND, Circuit Judge. The cause of action, as set forth in the complaint, is, that on the 30th of July, 1868, the defendant became owner of ten shares of capital stock of the insurance company, and that the stock was issued and taken by the defendant upon the condition that twenty per cent. was to be paid in cash, and eighty per cent. was to be paid in case losses rendered its payment necessary; that these were the terms of the charter, and the conditions upon which the defendant became a subscriber to ten shares of the stock; and a certificate of stock for these shares was accordingly issued to him. The complaint proceeds to state that by the losses which occurred on the 9th of October, 1871, at Chicago, the company became insolvent; that a petition in bankruptcy was filed against the company in the district court of the United States for the Northern district of Illinois, and a decree of bankruptcy was rendered against it in that court; and that court had made an assessment of sixty dollars on each share of the stock, and required the assignee to collect the same. [Case No. 11,704.]

There is a general denial by the defendant, which puts the material allegations of the complaint in issue; and there are various special defenses set up in the answer, the effect of which is the matter for consideration. The first special defense is, in substance, that the subscription of stock was made by the defendant in Fort Wayne, in this state; that the company was domiciled and established in Illinois, and was, in fact, a corporation created by the laws of Illinois; that the agents of the company came to the defendant and made certain representations as to its condition, and the terms upon which the stock was to be subscribed, alleging that no more than twenty dollars per share would be assessed against him or ever called for. The defendant asserts that he was ignorant of the actual condition of the company, and of the circumstances connected with its organization and progress so far, and that he, relying upon the statements of agents, authorized his name to be entered as a subscriber upon the books of the company, and upon that condition.

Now, as to this defense, it will be observed that it does not meet the material allegations of the complaint, or answer them. It may be all true, still the agreement set forth in the complaint would create an absolute liability on the part of the defendant, as, by the terms of the charter, the stock was to be taken in the manner stated, paid for as set forth, and he agreed to these terms in writing.

This defense clearly, therefore, does not go far enough. The result would be, even giving it all the effect that could be claimed for it, to change, by loose declarations made by the parties at the time, a written agreement, which of course cannot be done according to the well-settled principles of law.

Another special defense is, that the subscription to the stock was made by the defendant in Indiana; that the agent of the company, who was then engaged in the general business of procuring subscriptions to the stock of the company in this state, did not comply with the laws of the state of Indiana prior to the commencement of its business; and, therefore, that the subscription was not operative as against the defendant. This is a special defense set up under the act of June 17, 1852, of this state, respecting foreign corporations and their agents; and the first section of that act declares as to corporations not incorporated or organized in this state, that the agents, before entering upon the duties of their agency in this state, shall deposit in the clerk's office of the county where they purpose doing business, a power of attorney, commission, appointment, or other authority, under or by virtue of which they act as agents. The second section declares what the agents of the corporation shall do, viz.: file with the clerk of the circuit court before commencing the duties of their agency, the authority of the board of directors authorizing citizens of this state to maintain actions in the state in relation to any contracts, and authorizing service of process. The third section declares that the service of process on agents shall be sufficient. And the fourth section, that foreign corporations shall not enforce any contracts made by their agents before a compliance shall have been made with the provisions of sections one and two of the act. The fifth section declares that any person who shall directly or indirectly receive or transmit money or other valuable things to or for the use of such corporation, or who shall in any manner make or cause to be made any contract, or transact any business for or on account of any such foreign

corporation, shall be deemed an agent of said corporation, and be subject to the provisions of this act relating to the agents of foreign corporations. These are the provisions of the law contained in the first, second, third, fourth and fifth sections. The sixth section, however, provides that the fifth section shall not apply to persons acting as agents for foreign corporations for a special or temporary purpose, and for a purpose not within the ordinary business of such corporations.

Now it is a question which lies at the threshold of the examination of this part of the case, whether the act which was done by the agent of this corporation and the agreement which was entered into by the defendant with that agent, was such an act or agreement as was contemplated by this law, and which it intended to render inoperative unless the agent had complied with its conditions. I am clearly of the opinion that it was not. Conceding that a state would have the power to prevent any of its citizens from subscribing within its own limits to the stock of a corporation of another state, it would require a clear and explicit declaration that such a subscription should be null and void except upon compliance with certain terms. This act relates to the usual business done by a corporation and by its agents, and does not refer to obtaining subscription to its stock. The ordinary business, for instance, done by the corporation in question here, was an insurance business. The obtaining of subscriptions was an act preliminary to the commencement of its business. When the subscriptions were obtained, and the corporation was set in motion and was made to perform its functions, then the ordinary business referred to by this act began—the issuing of policies of insurance and performing the general and other business connected with such corporations.

I do not think that it is a fair or reasonable construction of the language of this law that it intended to prohibit such a contract as this. It does not appear, in point of fact, by this special defense which I am now considering, that the corporation was doing any of this ordinary business. The language, I think, therefore, of this sixth section, intended to exclude any such agreement as was made by the defendant in this case, when it declared that it was not to apply to persons acting as agents for special and temporary purposes, or for purposes not within the ordinary business of such corporation.

Another special defense set up is, that the company, without the knowledge or consent of the defendant, on the 25th of March, 1869, obtained from the legislature of Illinois an amendment to its charter by which the directors had the right to increase the capital stock of the company to five millions of dollars, and thereby the original charter was so changed as to release him from his liability to pay for his stock. It is necessary, in order to determine the validity of this defense, to look into the charter and the amendment to see whether it is justly subject to the objection that is made by the defendant. The act incorporating the Republic Insurance Company was passed by the legislature of Illinois on the 15th of February, 1865. The first section of the act created certain persons and their successors and assignees a body corporate by the name of the Republic Insurance Company of Chicago. The second section was as follows: "The capital stock of said corporation shall be one million of dollars, and may be increased to not exceeding five millions of dollars, at the discretion of the stockholders, and shall be divided into shares of one hundred dollars each, which shall be considered personal property, and be assignable and transferable only upon the books of the company under such regulations as the directors shall establish." The third section provides that when one hundred thousand dollars were subscribed and certain conditions were complied with,—that they had organized by choosing three or more directors, and those directors had chosen a president, secretary and treasurer, and filed a certificate in the office of the clerk of the city of Chicago,—then the company was deemed fully organized. The fourth section authorized the corporation to make and put in execution bylaws and regulations. There are some other sections of the character usual in the charters of corporations of this kind, to which it is not necessary to refer. The eighth section declared that the stock and affairs of said corporation should be managed by three or more directors. Now this is, as far as it concerns any question involved in this special defense, all of the charter that need be referred to.

The amendment which is objected to and referred to in this special defense, was passed by the legislature of Illinois on the 25th of March, 1869, the first section of which authorized the company to purchase and hold such real estate as might be convenient for the transaction of its business, and also to purchase any estate that it might be necessary to purchase for the purpose of securing any loan or debt. The second section of the amendment was as follows: "The board of directors shall have power to increase the capital stock of said company from time to time, in their discretion." It will be recollected that the language of the second section of the original act was, that it might be increased to not exceeding five millions of dollars, at the discretion of the stockholders. This authorized it to be increased at the discretion of the board of directors. The amendment says nothing about the extent of the increase. The third section declared that the stockholders resident in any town or city within the United States might, at any annual meeting of such stockholders to be held in such

town or city, elect such number of members for a board of directors as such stockholders might be entitled to by the by-laws of the corporation. The fourth section authorized the board of directors to make by-laws. The original act was, that the corporation might have power to make and put in execution by-laws—probably no essential difference between the original act and the amendment in this particular. The amendment contains two other sections that have no bearing upon the question before the court.

Now so far as there are any changes made by the amendment of such a character as to affect the contract which the defendant had made in 1868 with the corporation, there are only two particulars to which it is necessary to refer. As I have said, by the original charter the capital of the company was to be increased to five millions of dollars at the discretion of the stockholders; by the amendment, the board of directors had the right to increase it. The original charter declared that certain notice should be given of the election of directors to each stockholder by public advertisement or personal notice, and that it should be by ballot, by a majority of the stockholders, allowing one vote for every share either in person or by proxy; and the amendment declared that certain persons, under the circumstances referred to in it, should meet and elect directors—as many as the by-laws would authorize. These seem to be the only substantial particulars under which it can be claimed that the amendment constituted such a change in the relation between the corporation and stockholders as to authorize any stockholder to claim that the contract which he had made to subscribe to the stock was vitiated; and the question is, whether these changes give any countenance to that position. I think they do not.

How the discretion of the stockholders to increase the stock should be made manifest, the original charter does not state. It declared that the stock and affairs of the corporation were to be managed by the directors, and there is great force, I think, in the argument, that inasmuch as the directors were the persons through whom the stockholders acted, that discretion might be manifested through the authorized action of the directors. But, however this may be, I do not think that the change of such vague and indefinite phraseology as this, as to the manner in which the capital of a corporation is to be increased, would give the right to a subscriber to the stock to declare that the contract which he had made for his subscription and under which he paid a certain portion, and agreed to pay the remainder when the necessity for its payment appeared, was at an end. It seems to me that it was one of the implied conditions upon which he entered into his agreement—that the power of the legislature might be exercised to vary in that way the manner in which the capital stock

should be increased. It may be conceded that there are limitations to the power of the legislature in such a case as this; that the legislature may go so far in changing, altering, or revolutionizing the whole scope and spirit of the original charter by amendments, as to authorize a stockholder to say that he has not entered into that contract—that his obligations have ceased by the wrongful acts of the legislature; but while that is true, it is also true that, to a certain extent, the terms of a grant are subject to the control of the legislature, and every stockholder takes his shares subject to that control, and subject also to the control of those who manage its affairs, namely, the board of directors. And, therefore, when the legislature has acted in such a manner as this, and has merely declared that, instead of the stock being increased by the corporation at the discretion of the stockholder, it shall be increased by the resolution or act of the board of directors, it is not such a change, in my opinion, as would authorize a subscriber to say that his contract is at an end.

Then, as to the election of directors. It is true that there is, to some extent, a change made in the mode of electing directors; but it is to be observed that the original charter does not declare how many directors there shall be. It is three or more—no limit to the number of directors; and the amendment simply declares that the stockholders, within certain territorial limits, may have the power to elect such a number of directors as the by-laws may authorize. Now, certainly, there is nothing in the original charter to prevent these by-laws from declaring what number of directors there shall be, and what their qualifications, other than they must be stockholders as the original charter requires. There was, therefore, no such change by this amendment, in the original terms of the law, as to authorize a subscriber to the stock to declare his agreement or subscription at an end and his release from its obligation.

The other special defense, and I think the most important one presented in this case, is that which declares that this was a company incorporated by the legislature of Illinois with a capital stock of one million of dollars, and power to the stockholders at discretion to increase it to five millions of dollars; that the stockholders never increased the stock, but that the board of directors, in January, 1868, by resolution pretended to do so to the extent of five millions of dollars; and that the stockholders never consented to this increase; that the defendant subscribed for his stock in July, 1868, at Fort Wayne; that this stock was in excess of the one million of dollars of stock which was authorized by the original charter; and that he had no knowledge of the manner in which the capital stock had been increased. It will be seen, however, from what has already been said, that it can hardly be claimed, on the part of the defendant, that this change was of such a character, taking this special

defense in its largest extent, as to authorize him to declare his obligation at an end. And I have said, it may well be claimed that it was a power incident to the grant, for the legislature to authorize an increase of the capital stock by the directors, even if, under the terms of the original charter, the stockholders could not exercise that discretion through the directors.

It will not do when a citizen of the state subscribes to the capital stock of a foreign corporation to say that he was ignorant of the terms of the act which created that corporation. He is presumed to know what those terms are. They are created by the law of another state, and he, for the purpose of assuming his obligation, in a certain sense goes into another state and casts off for the time the vesture which his own state throws around him, and puts on that of the other state, and is bound by the obligations which the legislature of that state has imposed upon the corporation, and the privileges which it has granted, and the conditions and terms of the grant. All these he is presumed to know, just as much as when he makes any contract to be executed by him in another state. When he makes a contract in Indiana which is to be executed in another state, he is bound by the laws of the state where the contract is by him to be performed. The laws of Indiana have all ceased to operate upon that contract when he enters into it upon the condition and understanding that its terms and obligations are to be controlled by the laws of another state. So here this defendant, when he entered into this agreement, did it with reference to the laws of the state of Illinois—the special act of incorporation which was passed in February, 1865. The well know maxim, of course, applies to him in this case, just as it does in relation to any law of Indiana—that ignorance of the law does not excuse him.

But, however this may be in relation to this special defense, every difficulty there may be in the way is, I think, removed by the replication made to it, which alleges that after the passage and taking effect of the amendatory act, the directors affirmed their previous action increasing the stock of the company to five millions of dollars, and that the defendant did no act in repudiation or denial of his membership in the insurance company as a stockholder; but, on the contrary, until after the happening of the losses, the defendant continued to hold and retain his certificate of stock which had been issued to him by the company, and to participate in its affairs and profits, by aiding in the election of directors, and by receiving dividends declared on his stock. Now, this, I think, is a good reply to anything contained in this special defense.

It may be said, in conclusion, that the defense is not of a character to commend itself very strongly to the consideration of a court of justice. The company was unfortunate. Everything went on, as far as we can know—

and we have the right to suppose so from the allegations contained in these pleadings—satisfactorily to the defendant until this misfortune happened. He made no complaint. He participated in all the advantages of the company, receiving dividends, and elected directors, but when the storm came—when this terrible fire swept away so many millions of property—and rendered this company bankrupt, and made it indispensable for those who had claims upon it to call upon the subscribers to the stock to meet their obligations in order to fulfill contracts of the company, then he complains—then he wakes up to all the various objections which are set forth in this answer.

Now under such circumstances, when this is the only fund that the policy-holders have to meet the losses which they have incurred, and the only way in which the bankrupt company itself can respond to their demands, it would seem unless there is an insuperable bar created by the law, that equity should be done in such a case as this. I see no such insurmountable obstacle in the way here to prevent the course of equity.

Decree for complainant.

[For other similar actions brought by the assignee, see Payson v. Dietz, Case No. 10,861; Payson v. Coffin, Cases Nos. 10,859 and 10,858; Payson v. Hadduck, Case No. 10,862.]

NOTE. A similar case came before Judge Dillon, Nelson, J., concurring, in the Minnesota district, in June, 1873, and he, after full argument and consideration, sustained the right of the assignee to recover the assessment on unpaid stock, and approved the above rulings of Judge Drummond. Payson v. Stoever [Case No. 10,863].