DONOVAN v. FOX, *Appellant.*

Division One, March 24, 1894.

1. **Notes:** DEFENSE: BONA FIDE HOLDER. Defendant executed negotiable notes in favor of a life insurance company's agent with the understanding that the notes were to be returned if policies were not issued on defendant's application for insurance. The agent agreed to exchange the notes with plaintiff if policies were issued and after their issuance the exchange was effected. *Held*, that it was no defense to an action on the notes that defendant was induced by the agent to apply for a distribution policy when he intended to apply for an endowment policy and that it was agreed that the notes should not be used till the policies were delivered and found satisfactory, it not appearing that plaintiff knew of such representations and understanding.

2. ———: ———: ———. Plaintiff was sufficiently diligent in taking the notes, if he inquired whether. the policies had been issued and his indorser owned the notes.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*H. J. Grover* for appellant.

(1) The instruction asked for by the defendant, after the close of all the evidence, that on the pleadings

Donovan v. Fox.

and evidence the plaintiff could not recover, should have been given, for the reason that the evidence showed that Donovan had acquired the notes with full knowledge of the facts and infirmities, inherent in the original transaction, which would impeach the validity of the note as between Ferguson and Fox, and that Donovan had acquired the notes in bad faith. Daniel on Neg. Inst., sec. 799; *Henry v. Sneed,* 99 Mo. 423; *Whaley v. Neil,* 44 Mo. App. 320. (2) One who takes a note, whether before or after maturity, with notice that it was given for a subscription to the stock of a corporation, which has not been issued, takes it subject to the defense of want of consideration, upon the falling through of the organization of the company, and failure to issue such stock. *Bradford v. Harris,* 26 Atl. Rep. (Md.) 186; *Harris v. Nichols,* 26 Ga. 413. (3) Knowledge on the part of a purchaser of a note that "there was trouble about the trade," is sufficient to charge upon the purchaser notice of the fraud, equity or illegality in the trade or transaction. *Henry v. Sneed,* 99 Mo. 408; Daniels on Neg. Inst., sec. 799; *Whaley v. Neil,* 44 Mo. App. 320. (4) Willful blindness, when by seeing the purchaser could know all the infirmities of the notes, is fraudulent blindness and constitutes bad faith. Daniels on Neg. Inst., 977*a*, 795*b*. (5) Gross negligence which is not in itself proof of *mala fides,* may be so great as to amount to notice. Daniels on Neg. Inst., 795*b*, 774. (6) In view of Donovan's admitted knowledge of Fox's ample solvency, the inadequate price paid by Donovan for the notes was notice to him of infirmities of the paper. Daniels on Neg. Inst., 777*a*, 778, 779. Donovan's own testimony disclosed his knowledge of sufficient facts to put him on inquiry, and the maker was thus relieved of any duty of bringing home to him such knowledge. See *Mayes v. Robinson,* 93 Mo. 121; *Whaley v. Neil,* 44 Mo. App. 320.

*Willi Brown* for respondent.

(1) As to what constitutes bad faith, see the article on "What is bad faith," citing the rule in the U. S. supreme court, in various state courts, and in England. 22 Cent. L. J. 437.   (2) Prior to the case of *Hamilton v. Marks*, 63 Mo. 177, it was the rule in this state that suspicious circumstances (though we claim there were none in this case) put a purchaser of a note upon inquiry as to the validity of the consideration, but that case decided that bad faith alone would defeat his title. *Edwards v. Thomas*, 66 Mo. 483; *Johnson v. McMurray*, 72 Mo. 282; *Bank v. Tinsley*, 11 Mo. App. 502; *Mason v. Bank*, 16 Mo. App. 278, 281; *Mayes v. Robinson*, 93 Mo. 114; *Bank v. Stanley*, 46 Mo. App. 448; *Studebaker v. Dickson*, 70 Mo. 274; *Boone v. Shackleford,* 66 Mo. 497; *Cass Co. v. Green*, 66 Mo. 511; *Smith v. Steel*, 81 Mo. 458; *Straus v. Railroad*, 86 Mo. 438; *Dobyns v. Myers*, 20 Mo. App. 71.   (3) The answer in this case is drawn to follow the rule of *Mayes v. Robinson, supra*, that the holder must have actual notice of the fraud before his title can be impeached.   (4) "When general proof is made by the holder that he received the paper before due, *bona fide* and for value, it then devolves upon the maker to prove that the holder had actual notice of the specific facts which would render it originally invalid, otherwise the plaintiff must recover."   And "the jury were very properly instructed that there was no testimony that plaintiff knew of the fraud." *Johnson v. McMurray*, 72 Mo. 282; *Mayes v. Robinson, supra*.   (5) "A *bona fide* purchaser of a negotiable instrument, even though stolen, becomes owner of same notwithstanding defect in the title of his vendor." *Bank v. Heinsman*, 1 Mo. App. 336.   (6) "The consideration of negotiable paper in the hands of a *bona fide* holder for value before

maturity can not be inquired into." "Actual notice of the facts which impeach the validity of the note must be brought home to the holder." *Mayes v. Robinson*, 93 Mo. 114; *Bank v. Stanley*, 46 Mo. App. 440. (7) "Where a negotiable note is assigned before maturity there can be no inquiry into the consideration as between the original parties till it is shown the holders were not innocent purchasers." *Merrick v. Phillips*, 58 Mo. 438; *Hamilton v. Marks, supra.* (8) "That a negotiable note is taken without recourse can not in any manner affect the rights of the indorsee against the maker." *Mayes v. Robinson, supra.* (9) In the cases of *Massman v. Holscher*, 49 Mo. 87, and *Henshaw v. Dutton*, 59 Mo. 139, just such defenses as are here interposed were set up and the court says: "Where a note is given on contingencies not therein expressed, the failure of such contingencies can not be set up as a defense. A note can not be given to the payee as an escrow. The delivery must be to a third person."

Brace, J.—This is an action on two negotiable promissory notes drawn by the defendant Hugh L. Fox, both dated on the twenty-seventh day of May, 1890, payable to his own order, one year after date, each for the sum of $2,960, with interest at the rate of seven per cent. per annum after maturity, which the plaintiff in his petition alleges the defendant thereupon negotiated by indorsing his name thereon and delivering the same to one J. A. Ferguson who afterwards and before the maturity thereof, to wit, on the twenty-fourth of June, A. D. 1890, indorsed and delivered the same for value to plaintiff, who afterwards, to wit, on the thirty-first day of January, 1891, indorsed and delivered the same for value to the German American Bank, who at the maturity of said notes was the holder thereof, and who caused the same to be duly presented

for payment, and upon payment being refused caused the same to be duly protested for nonpayment. That afterwards, to wit, on the sixteenth day of June, 1891, plaintiff paid said bank the amount of the principal and interest due on said note and costs and took up said notes, which still remain due and unpaid, and for which he asks judgment.

The answer of the defendant admits the execution of the note, as maker, and that he indorsed the same, denies all the other allegations of the petition, and sets out the circumstances under which he alleges said notes were so executed and indorsed, his plea in substance being that the notes were obtained from him by fraud and without consideration, and that plaintiff took them with notice. The reply was a general denial.

The facts disclosed by the evidence are substantially as follows: At the date of this transaction the plaintiff and defendant were business men in the city of St. Louis. W. L. Hill was the general agent or manager of the New York Life Insurance Company in that city, and John A. Ferguson residing in Denver, Colorado, was agency director, and solicitor of said company. On or about the twenty-seventh of May, 1890, Ferguson having been sent to St. Louis by the inspector of agencies on that business, solicited the defendant and others to take out life insurance policies in said company. As a result of his solicitation, the defendant on that day made application in writing to said company for three policies of life insurance amounting in the aggregate to the sum of $100,000, for the cash premium on which, the notes sued on were executed, indorsed and delivered to the said Ferguson and by him delivered to the said Hill, who thereupon executed and delivered to the defendant a receipt therefor, to the effect that the same were to be applied to the payment of said premiums in case the application of defendant

should be approved by said company, and policies issued thereon, and in case said company should not issue the policies on said application said notes to be returned to the defendant and the receipt given up. The application was forwarded to the office of the company at New York, and thereafter in due course policies were issued, as applied for.

Before they were received in St. Louis, however, Ferguson entered into negotiations with the plaintiff, who was a dealer in real estate, for the purchase of an undivided half of a tract of land in East St. Louis, in the course of which he signified his willingness to take the land provided the plaintiff would take in exchange the notes of the defendant, which he informed the plaintiff had been given for the premium upon a hundred thousand dollar policy that Mr. Fox had applied for, and that if Mr. Fox was found by the medical board to be an acceptable risk, and the policies were issued as applied for, he would sell him the notes at their face value, and take the real estate. A preliminary agreement to this effect was entered into about the twelfth of June, a deed of that date was signed by plaintiff and his wife which was acknowledged on the sixteenth of June. In the meantime the application of the defendant had been accepted by the insurance company, policies issued and forwarded to the St. Louis office of the company, and delivered to the defendant, his notes charged up to Ferguson as cash on his account with the company in that office, and delivered to Ferguson together with a written memorandum dated June 24, 1890, signed by said Hill as "manager" stating that the premium on $100,000 insurance issued to H. L. Fox had been paid to the company, and that the notes for $5,800 taken for the premium is the property of the said Ferguson. On the

next day Ferguson informed the plaintiff that Fox had received his policies, and exhibited to him the statement of Hill and thereupon the trade between them was closed by the indorsement and delivery of the notes by Ferguson to the plaintiff and the delivery by the plaintiff to him of a deed to the real estate and the payment to him of about $2,000, the difference between the face value of the notes and the price agreed upon for the land. The notes were afterwards negotiated by the plaintiff, protested and taken up by him as charged in the petition.

It further appears from the evidence that the policies applied for and issued were what are called "twenty year distribution policies." That after the policies had been delivered to Fox and before the trade was closed with Donovan, Ferguson informed Fox that he might sell the notes to Donovan. That afterwards an error was found in spelling the name of the beneficiaries; that the policy was returned to the home office at New York, corrected and returned to Mr. Fox. The evidence further tended to prove that some other alteration of the original policies was made by a slip attached to each of them, the purport of which does not appear, and that Fox made some other objections to the policies to Ferguson in consequence of which the latter addressed to him a note as follows:

"*A.* Regret not seeing you. Should you not be able to get down again, Mr. Hill will give you any information you want. I would say, we issue some fifty different kinds of policies, and if there is any other kind that would suit you better, we would be glad to change. You have, however, the best policy that has ever been devised. Instead of taking the word of a rival company, why don't you go to the actuary of the Missouri insurance department, Mr. Harvey?

"Yours,                    FERGUSON."

Some correspondence seeme to have subsequently passed between Fox and the insurance company in regard to these policies, the purport of which does not appear. Fox, however, kept the policies, and had them on the day of the trial. The evidence further tended to prove, that a mistake of $100 was made in calculating the amount of the premiums, and that it should have been $5,820 instead of $5,920. The evidence further tended to prove that the written application of the defendant contained the following clause: "I do hereby agree as follows * * * *Second*. That, inasmuch as only the officers of the home office of said company in the city of New York have authority to determine whether or not a policy shall issue on any application, and as they act on the written statements and representations referred to, no statements, representations or information made or given by or to the person soliciting or taking the application for a policy or by or to any other person shall be binding on said company, or in any manner affect its rights, unless such statements, representations or information be reduced to writing, and presented to the officers of said company at the home office in this application."

Upon this state of case disclosed upon the evidence of plaintiff and defendant, the defendant then further offered in evidence the deposition of Rufus W. Weeks actuary of the insurance company to which the plaintiff objected, and the following colloquy ensued:

"*The Court:* I think at this stage I ought to require you to put in whatever testimony you have to connect Mr. Donovan with the alleged failure to deliver you the policy.

"*Mr. Grover:* We have no other testimony on that subject. I offer to read this deposition of Mr. Weeks.

"*Mr. Brown:* I object to it, as incompetent and irrelevant.

"*The Court:* Before going further, I think I ought to require you to put in all the testimony that you have connecting Mr. Donovan, the plaintiff, with the matter that you plead here as new matter, and that you plead here as a defense to those notes. If you say that you have now introduced all that you have, I think I ought to instruct the jury that the defense must fail, and therefore it would be useless to go further into the matter as to whether the policy was what Mr. Fox was entitled to.

"*Mr. Grover:* I want to get this thing in regular order. I offer the deposition of Mr. Weeks. That is objected to, as I understand.

"*Mr. Brown:* I object to it, yes, sir.

"*Mr. Grover:* And the court sustains the objection?

"*The Court:* On the ground that before going further into that branch of the case, the court requires you to put in all the testimony you have, connecting Mr. Donovan with this alleged defense, the failure of consideration of these notes.

"To the above ruling of the court, defendant by counsel then and there duly excepted.

"The defendant was then sworn as a witness and interrogated as follows:

"*Q.* Please state to the jury the entire transaction between you and Mr. Ferguson as to your application for insurance in the New York Life Insurance Company, the application which you signed, and the statements which he made to you with regard to the giving of your notes, and the statements which he made to you with regard to what should be done with those notes, and the whole transaction between you and Mr. Ferguson.

"Objected to as incompetent and irrelevant, and on the ground that defendant has not established the knowledge of Mr. Donovan at this time.

"*The Court:* The objection to that will be sustained, unless you propose to show that Mr. Donovan had knowledge of that conversation, of which you are now inquiring.

"To which ruling of the court defendant, by counsel, then and there duly excepted."

Several other questions of like character were asked, objected to and objections sustained on the same grounds, and the ruling thereon excepted to. The case was submitted to the jury on two instructions given on behalf of plaintiff, after all the instructions asked for defendant had been refused. The first instruction was on the issue of protest, notice and damages. The second was as follows:

"The court instructs the jury that the answer of the defendant admits that he signed and indorsed the notes sued upon, and if the jury find from the evidence in the case that said notes were indorsed and delivered by J. A. Ferguson to said plaintiff, and that plaintiff acquired said notes for a valuable consideration in the ordinary course of business before maturity, then the plaintiff is entitled to a verdict in his favor."

The jury returned a verdict in plaintiff's favor for the amount of the notes, interest, costs and damages, and from the judgment entered thereon defendants appeals.

I. The foregoing somewhat extended statement of the salient features of the case will obviate the necessity of its discussion in detail. The gist of the defense which was attempted to be interposed to defeat a recovery was that defendant was induced by the representations of Ferguson to make application for a twenty year distribution policy, when he intended to

apply for a twenty year endowment policy in the New York Life Insurance Company, and that when he executed, indorsed and delivered the notes for the premium, it was with the understanding that the notes were to be held and not used until the policies were issued and delivered to him, and found to be satisfactory. That after the policies were delivered to him he found them to be other than he expected, and, notwithstanding some changes were made to meet his objections, he still remained unsatisfied and continued in that condition of mind, holding the policies until the notes matured, and this suit was brought and tried. The court by its action refused to inquire further into the merits of such a defense in this action unless the defendant would undertake to show that the plaintiff had knowledge of such representations, and understanding.

In this we think the court committed no error. The note was a negotiable note importing a consideration. The uncontradicted evidence was that it was negotiated by the defendant by indorsement and delivery to Ferguson, by whom it was indorsed and delivered to the plaintiff for a valuable consideration, before maturity, in the ordinary course of business. The evidence given was not only insufficient to charge the plaintiff with notice of any defect in the consideration of the note, but, on the contrary, showed that such information as he had upon the subject was calculated to assure the mind of a reasonably prudent man that the note had an adequate consideration, and that the holder was the owner thereof and entitled to negotiate the same.

But it is said that, although the plaintiff had no knowledge of the representations of Ferguson and the alleged agreement to hold defendant's notes until he had received and was satisfied with the policies issued

therefor, yet, having been informed pending the negotiation that the notes were given for the premium upon the policies applied for by Fox, it became the duty of plaintiff, before trading for the notes, to make further inquiry as to the notes and their consideration—certainly it did. Ferguson did not then have the notes, or pretend to have them, or to be entitled to them, or that Fox had yet received the consideration for them, which was the policies he had applied for, and it was not proposed that the plaintiff should then have the notes, or have them at all, unless Fox's application was accepted, and the policies issued and delivered to him. But, when Ferguson appeared for the purpose of consummating the trade, he inquired further. He inquired whether Fox had received the policies, and whether Ferguson was the owner of the notes, and upon being satisfied that such was the case he traded for the notes, as any prudent man might well have done.

It was not incumbent upon him to inquire into the details of the transaction between Fox and Ferguson. If he had, however, as it turns out upon the evidence in this case, the most he could have discovered would have been that Fox had no legal defense against these notes, for he would have found that they were given and negotiated for a valuable consideration, which Fox had received in pursuance of and in strict compliance with the contract, every part of which was evidenced by writing, but which Fox might attempt to defeat by parol declarations in the teeth of a written agreement. The law, however, did not impose upon him the duty of making such inquiry. *Mayes v. Robinson*, 93 Mo. 114; *Johnson v. McMurry*, 72 Mo. 278; *Edwards v. Thomas*, 66 Mo. 468; *Hamilton v. Marks*, 63 Mo. 167; *Merrick v. Phillips*, 58 Mo. 436; *Greer v.*

*Yosti*, 56 Mo. 307; *Corby v. Butler*, 55 Mo. 398; *Horton v. Bayne*, 52 Mo. 531.

We fail to find in the evidence given, or offered, anything tending to impeach the good faith of Donovan in acquiring these notes, and see no good reason why the trial court might not have instructed the jury to return a verdict for the plaintiff as at one time it seemed inclined to do. No harm was done, however, by submitting the issue to the jury. The judgment is for the right party, and is affirmed. All concur.