FIRST    NATIONAL    BANK, Respondent, v. H. L. LEEPER, Appellant.

Kansas City Court of Appeals, November 19, 1906.

1. FOREIGN CORPORATIONS: Doing Business: Statutory Construction. Under sections 1024, 1025 and 1026, Revised Statutes 1899, "doing business" means transacting some act of business of the character for which the foreign corporation was organized.

2. ——: ——: ——: Telephone Company: Selling Stock: Note. The selling of some of its stock in this State by a foreign telephone corporation is not a prosecution of the business for which the company was organized and does not come under the statute, and a note given for such stock is not invalidated by the fact that the company has not complied with the statute.

3. BILLS AND NOTES: Consideration: Holder: Fraud: Assignor. When the holder receives a note before due, bona fide and for value, it devolves upon the maker to prove his actual notice of specific facts which would render it originally invalid and mere knowledge that would put one on inquiry is not sufficient, much less suspicion of fraud in the transaction out of which the note grew.

Appeal from Nodaway Circuit Court.—*Hon. William C. Ellison*, Judge.

AFFIRMED.

*J. W. Stokes* and *Anthony & Ford* for appellant.

(1) States can prescribe the conditions on which foreign corporations can do business within their boundaries. Bank v. Earl, 13 Pet. 586; Paul v. Virginia, 8 Wall. 168. (2) The Hanamo Telegraph and Telephone Company being a "Resident-Foreign Corporation" and having failed to comply with the statutes its contracts are void. Amusement Co. v. Amusement Co., 192 Mo. 404. (3) This rule applies to commercial paper and makes it void, even in the hands of an innocent holder. Downing v. Ringer, 7 Mo. 585; Comings v. Leedy, 114 Mo. 454; Ehrhard v. Robertson, 78 Mo. App. 404; Daniel on Nego. Inst. (2 Ed.), sec. 197; Tiedeman on Com. Paper, sec. 178. (4) The note being taken by the agent is subject to the same rule. It is an attempt to do indirectly what the statutes forbids and "A fraud on a statute is a violation of the statute." Bank v. Owens, 2 Pet. 535; Whaley v. Neill, 44 Mo. App. 316. (5) If the corporation has failed to comply with the statute, as pleaded the note is without consideration. Swing v. Vinegar Co., 77 Mo. App. 391.

*Martin & Ramsey* for respondent.

(1) As to the alleged want of consideration, it not only devolves on defendant to introduce some testimony tending to show a want of consideration, but the burden rested upon his shoulders throughout the trial to show that the officers of plaintiff bank had actual knowledge of such want of consideration. Hahn v. Bradley, 92 Mo. App. 399. (2) This court will notice that defendant offered no evidence tending to show that plaintiff bank, or either of its officers knew or had notice of the fact that there was "trouble about the trade" or contention between defendant and payee of the note. Henry v. Sneed, 99 Mo. 408; Bank v. Stanley, 46 Mo. App. 440;

121 App—44

Mayes v. Robinson, 93 Mo. 114; Johnson v. McMurry, 72 Mo. 382; Donovar v. Fox, 121 Mo. 236; Hamilton v. Marks, 63 Mo. 177; Bank v. Hammond, 104 Mo. App. 410; Bank v. Hainline, 67 Mo. App. 483; May v. Crawford, 150 Mo. 527; Poindexter v. McDowell, 110 Mo. App. 236; Investment Co. v. Realty Co., 178 Mo. 79. (3) Where a negotiable note is assigned before maturity in the usual course of business to an alleged innocent purchaser for value there can be no inquiry into the consideration as between the original parties until it is shown that the holder was not an innocent purchaser. Menick v. Phillips, 58 Mo. 436; Hamilton v. Marks, 63 Mo. 177; Jennings v. Todd, 118 Mo. 296; Investment Co. v. Vette, 142 Mo. 573. (4) Hence as we claim, the trial court committed no error in refusing to permit deposition of the Secretary of State to be read in evidence over the objections of the plaintiff interposing this point. Asher v. Texas, 128 U. S. 129; Robins v. St. District, 120 U. S. 489; Leloup v. Port of Mobile, 127 U. S. 640; Carson v. Maryland, 120 U. S. 520; Postal Telegraph Cable Co. v. Charleston, 153 U. S. 871; Breman v. Titusville, 153 U. S. 189; State ex rel. v. Tel. Co., 165 Mo. 528; Tel. Co. v. Texas, 105 U. S. 460; Leloup v. Mobile, 127 U. S. 45; Telegraph Co. v. Telegraph Co., 96 U. S. 1; Telegraph Co. v. Texas, 105 U. S. 460. (5) Even had there been evidence tending to show non-compliance with the laws of Missouri, and that the officers of the bank had knowledge of said non-compliance, under the position last discussed, the decision below being for the right party, though for the wrong reason, cannot be by this court reversed. Bank v. Harrisonville, 157 Mo. 133; Jones v. Boonville, 161 Mo. 258; Bowman v. Lickey, 86 Mo. App. 47; Wagoner v. Electric Illum. Co., 82 Mo. App. 287.

ELLISON, J.—This was an action on a negotiable promissory note. The judgment in the trial court was for the plaintiff. The note was executed by the defend-

ant to H. E. Ralston and by the latter sold and indorsed to the plaintiff bank. The evidence showed that the plaintiff purchased the note for value, through its cashier, before maturity.

The defense was that the note was without consideration and was procured by fraud. This defense involves a construction of our statute (sections 1024, 1025 and 1026, Revised Statutes 1899) in relation to foreign corporations doing business in this State. It seems that a corporation known as the Hanamo Telegraph and Telephone Company was incorporated in the State of Delaware. That a board of directors in Missouri authorized H. E. Ralston, the payee in the note in suit and president of the corporation, to sell certain portions of its capital stock and that he sold certain shares to this defendant and received in pay therefor the note in controversy, and that he then sold the note to the plaintiff bank as stated.

The question of fraud and want of consideration presented are really one and the same thing. Both defenses are based on the statute above cited, that is to say, defendant's claim is that the company being a foreign corporation and (as is admitted) never having complied with the laws of this State its contracts are void. That the contract of sale being void, defendant did not get title to any stock. That the company could not be a contracting party to the note and that the note was void as a part and parcel of the illegal contract. By a course of reasoning in substance what we have just stated, the defendant claims that it was a fraud to inveigle him into an illegal contract, and that the contract was without consideration because the statute did not permit a sale of stock by a company which had not complied with the law. In deciding the case, we shall treat H. E. Ralston, the payee of the note, who was president of the company, as the company itself. For though the

note is made to him individually, he was acting for the company.

There is no doubt of the correctness of defendant's claim that the corporations named in the statute who do the business forbidden to be done without a compliance with the statute, are disabled from making or enforcing contracts, that is to say their contracts are void. [Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404; Chicago Mill. Co. v. Sims, — Mo. —; Ehrhardt v. Robertson Bros., 78 Mo. App. 404; Fay Fruit Co. v. McKinney, 103 Mo. App. 304.] The statute (section 1024) reads that "Every corporation for pecuniary profit formed in any other State, territory or county, before it shall be authorized or permitted to transact business in this State" shall maintain an office, etc., where legal service may be had upon it. It further provides (section 1025) that any such corporation, "now or hereafter doing business in this State, shall file in the office of the Secretary of State a copy of its charter," etc. The statute (section 1026) then provides a penalty against any such corporation "now doing business in or which may hereafter do business in this State" without complying with the foregoing provisions and denies it a right to sue in the courts of this State "upon any demand, whether arising out of contract or tort." It will be noticed that this statute does not refer to foreign corporations who may merely come into this State, even though they may establish themselves here; but such corporations must engage in *"doing business"* in this State. What is meant by the words "doing business" in the sense of the statute? It is held in some jurisdictions that a single transaction of business is doing business. [Farrior v. New England Mort. Co., 88 Ala. 275.] In others it is held that there must be more than an isolated transaction — that there must be a prosecution, a continuation of business. [Cooper Mfg. Co. v. Ferguson, 113 U. S. 727.] In People v. Horn Mining Co.,

105 N. Y. 76, 83, the court refused to say that a single business transaction would constitute a doing business in the sense of the statute.

But we believe all agree that it must be a doing or transacting of business for which the corporation was incorporated, and not merely what it might have authority to do. "There must be a doing of some of the works, or an exercise of some of the functions, for which the corporation was created to bring the case within the clause." [Sullivan v. Timber Co., 103 Ala. 371; Beard v. Publishing Co., 71 Ala. 60; International Cotton Seed Co. v. Wheelock, 124 Ala. 367; Morgan v. White, 101 Indiana 413.] In the latter case it was said that the agents contemplated by the statute are such agents as propose to transact "the business in which the incorporation is engaged, and that it has no application to persons who are engaged in appointing agents to do its business. It may be necessary to appoint agents to do the business of a corporation, but appointing agents can hardly be said to be the business of any corporation in the sense of the statute." In Beard v. Publishing Co., supra, it was held that receiving subscriptions to a newspaper published in another State, or collecting the money therefor, is not a doing business in the sense of the statute. And so it was held in Payson v. Withers, 5 Biss. 269, that procuring subscriptions to the capital stock of a corporation formed in another State, was not the doing of business as contemplated by such statutes; the court saying that the statute referred to the usual business for which the corporation was organized.

The business of the corporation here involved was that of a telegraph and telephone company. That is a well known business, and the prosecution of such business does not consist in selling some of its stock to an individual. Such a transaction or such transactions, it is true, may occur, but they are not the usual, or customary, or ordinary business of a telegraph, or tele-

phone company, nor is such a corporation organized for the transaction of such business. We therefore hold that selling the stock to defendant for which he gave the note in suit was not transacting, or doing business in the sense of the statute to which we have referred. What we have said practically disposes of the case and determines that the judgment should be affirmed. It is true that there was a suggestion in defense that plaintiff merely held the note for collection for the payee, but there was no evidence of this.

It is furthermore true that defendant claimed that the evidence showed plaintiff had knowledge that the note arose out of the sale of the stock and of the sale itself. But the only substantial point in this showing was based on the idea that the statute made the transaction unlawful and that plaintiff knowing of the transaction would be charged with the effect of its unlawful character. This is disposed of in the construction which we have placed on the statute.

Defendant presented an additional phase of his contention that there was no consideration for the note, in the direct claim that no stock was ever delivered by Ralston to him. There is no evidence of any substantial character that this plaintiff knew of this, if it be true. The law is that if one purchases a negotiable note in the usual course of business for value before due without notice of any infirmity therein he can hold the maker though such maker received no consideration therefor. If such note is shown to have originated in fraud the holder must then show that he purchased bona fide before due and for value. "When the general proof is made by the holder that he received the paper before due, bona fide and for value, it then devolves upon the maker to prove the holder had actual notice of the specific facts which would render it originally invalid." [Johnson v. McMurray, 72 Mo. 278.] Mere knowledge of facts which would ordinarily put one on inquiry will

not do, there must be actual notice. [Hamilton v. Marks, 63 Mo. 177; Jennings v. Todd, 118 Mo. 296; Mayes v. Robinson, 93 Mo. 114; Donovan v. Fox, 121 Mo. 236; Borgess v. Vette, 142 Mo. 573.] And it is well settled that mere suspicion that a negotiable note is without consideration, or was obtained by fraud brought home to the transferee before he acquires the note, will not be sufficient to defeat a recovery. [Authorities supra.] Applying these well known rules of commercial law to the evidence in the case, we find that no defense whatever was made out. The location of the office of the bank and of Ralston, his relationship to the president of the bank, the matters transpiring at the time the note was purchased, in the light of the evidence would not have justified a verdict for defendant. The only defense which has given us any difficulty was that in reference to the statute and having determined that against the defendant's view, it left the case in such condition as would have justified a peremptory instruction to find for the plaintiff. The foregoing discloses that it is not necessary to consider objections to instructions. The judgment will be affirmed. The other judges concur.