This suit was filed in the Fifty-Eighth district court of Jefferson county on the 13th day of February, 1912, by A. Kaplan, as plaintiff, against T. F. Denman, as defendant, to recover upon a promissory note alleged to have been executed and delivered by the defendant to the Morse Timber Company, Limited, on June 3, 1911, for the sum of $2,400, and which was assigned by the Morse Timber Company, Limited, to the plaintiff, A. Kaplan. The case was tried and judgment rendered for the plaintiff on April 18, 1917, and from the judgment defendant has appealed to this court and assigned errors.
There are three questions involved in this appeal, viz.: (1) Was the sale of the 30 shares of stock by the Morse Timber Company, Limited, to T. F. Denman, and the taking of the note as consideration therefor, the "doing of business" within the purview of articles 1314 and 1318? (2) Was the assignment of the note by the Morse Timber Company, Limited, to the plaintiff, Kaplan, sufficient, prima facie, to show title to the note sued on? (3) Did the trial court err in excluding the evidence offered by defendant which he contends shows failure of consideration for the note sued on?
The first assignment of error complains that the court erred in excluding the evidence of defendant, T. F. Denman, because same varied the written contract sued upon, which was objected to by defendant.
The contention is made that a written contract, complete and unambiguous of itself, cannot be added to, altered, varied, or changed by evidence of a contemporaneous parol agreement between the parties, in the absence of allegations and proof of fraud, accident, or mistake. It seems that the defendant pleaded as a defense to the suit on the note, and so testified on the trial of the case, that the consideration for the note sued on was 30 shares of the capital stock of the Morse Timber Company, Limited, which was issued and delivered to him at the time of the execution and delivery of the note, but that at the same time, and as a part of the same transaction, the defendant was employed as agent to sell stock of the Morse Timber Company at Beaumont, and that it was agreed by and between the defendant and the Morse *Page 740 
Timber Company at the time of the execution of the note that the defendant was to pay the note from or with commissions on the sales of stock of the Morse Timber Company, and that in the event the defendant was unable to sell sufficient amount of the stock to enable the defendant to pay the note from his commissions, the note was not to be paid, and the 30 shares of stock were to be returned to the Morse Timber Company, and the note sued on was to be canceled and returned to the defendant.
The view we take of this matter is that there was no error in the action of the lower court in holding, that the written contract could not be altered or varied by evidence of a contemporaneous parol agreement between the parties in this case. The rule of evidence is elementary. It appears to this court that appellant undertakes to escape the operation of the rule by confusing the application of it with his plea of failure of consideration, and in our opinion, where a plea of failure of consideration is made under such plea, we do not think the court would be authorized to admit evidence showing, not a failure of consideration, but a contemporaneous parol agreement entirely different and contradictory of the written contract. If appellant's pleading in fact raises the issue of failure of consideration, he failed to offer any proof to substantiate the plea, and rather attempted under the plea to introduce evidence varying the terms of the written contract by a contemporaneous parol agreement different from and contradictory of the written contract, the consideration of which he claimed had failed. We are of opinion that it is well settled in this state that the consideration recited in a written contract can be explained or contradicted by parol, except in cases where parol proof of consideration shows an entirely different contract from that shown by the writing.
The evidence in this case shows that the consideration for the note sued on was 30 shares of stock of the Morse Timber Company, and the further agreement that upon a certain contingency the note should not be paid, and that the note should be canceled and surrendered and the stock returned to the timber company. This shows an entirely different contract from that evidenced by the note, and is contradictory of its terms. The fact that the statute required all of the facts to be alleged, and a plea of failure of consideration to be verified, does not change the rule of evidence, and it was never intended that it should. This statute merely requires the defendant to comply with it as preliminary to offering such proof as should be admitted under the settled rules of evidence. Judge Stayton, in Dolson v. De Ganahl, 70 Tex. 622, 8 S.W. 321, says:
"In view of the further disposition of the case, we deem it proper to say that the note sued on evidences the contract of the parties, and under the pleadings all evidence as to parol contemporaneous agreements between the appellant and the deceased affecting the contract evidenced by the note, and tending to vary or contradict it, should be excluded. The note fixes the obligation of the appellant to pay, and his pleadings leave open to him only the defense that it was executed without consideration."
The note sued on in the instant case was an absolute promise to pay. The consideration for the note was 30 shares of stock of the Morse Timber Company. The note was executed and delivered. The stock was issued and delivered. The contract was completed and executed as between the parties. The evidence offered by the defendant and excluded by the trial court does not show, nor does it even tend to show, that the note sued on was without consideration, or that the consideration had failed, but attempts to show that there was a contemporaneous parol agreement between the parties to the note, to the effect upon certain contingencies that might or might not thereafter occur the note should not be paid, the consideration returned, and the entire transaction canceled and held for naught. This does not show a want of consideration, as the 30 shares of stock may have a greater present value than at the time of the execution of the note. This evidence merely shows a contemporaneous parol agreement between the parties to the effect that upon contingencies that might thereafter occur the entire contract was to be rescinded. This does not touch the question of consideration. This is not the case of a note executed with a parol agreement between the parties that the note is not to become a contract until and unless a certain event occurred, and where it is shown that the event did not occur.
In this case, the note was executed and delivered to the payee as a complete contract, and the payee had power to sell or otherwise dispose of the note, and in fact did sell and assign the note. The payee in the note issued and delivered to the maker of the note a certificate for 30 shares of stock. The maker of the note had this stock in his possession with power to sell and dispose of the same, and the written contract took effect and went into operation between the parties with the condition or contingency resting entirely in parol that the entire contract was to be rescinded, the consideration restored, and the note canceled, if a certain event came to pass. In the case of Life Ins. Co. v. Allen, 170 S.W. 131, decided by the Ft. Worth Court of Civil Appeals, an agent of the insurance company agreed with Allen at the time of taking Allen's note for the premium on a life insurance policy that if he (Allen) would assist the agent in procuring other insurance, he (Allen) would never be called upon to pay the note. The insurance company sued Allen on the note. Allen defended the suit and set up the contemporaneous parol agreement, and also offered to prove that he had assisted the agent in procuring other *Page 741 
insurance, and that he was therefore not liable on the note. The court held that this evidence was not admissible to defeat liability on the note.
Without going further into the matter, we are of opinion that there was no error in the action of the court in this matter, and therefore this assignment must be overruled.
Article 588, Vernon's Sayles' Texas Civil Statutes 1914, provides as follows:
"When a suit shall be instituted by an assignee or indorsee of any written instrument, the assignment or indorsement thereof shall be regarded as fully proved, unless the defendant shall deny in his plea that the same is genuine, and moreover shall file with the papers in the cause, an affidavit stating that he has good cause to believe, and verily does believe, that such assignment or indorsement is forged."
The plaintiff in his petition alleged in general terms the execution of the note by the defendant, and that the same had been transferred and indorsed by the Morse Timber Company, Limited, to the plaintiff. On the trial the plaintiff offered in evidence the original note sued on, and on the back of the note was the following indorsement: "Morse Timber Co., Ltd., by Frank C. Labit, Sec'y." No plea of non est factum was filed. The defendant's answer was verified, but it does not attack the validity of the assignment of the note. In the case of Grounds v. Sloan, 73 Tex. 662,11 S.W. 898, the court, in speaking of this identical statute, says:
"Clearly this statute intends to give an assignee of a written instrument the right to recover upon it without other proof than the production of the indorsed instrument unless its genuineness is denied specially in the answer, supported by an affidavit. Without such plea and affidavit evidence contesting the validity of the assignment should not be heard. Even if evidence to the effect that the assignment for any cause is invalid or incomplete should be admitted, in the absence of the plea prescribed by the statute, it would go for nothing. A valid judgment cannot be rendered on evidence unsupported by a proper pleading. Without the prescribed plea the language of the statute is that the assignment `shall be regarded as fully proved.' This includes delivery and everything else required to give the assignment legal effect. The statute would be of very little value to the assignee if it left it necessary for him to bring proof of the actual delivery of the assigned instrument or left that fact open to attack under a general denial."
Thus is disposed of the second proposition arising in this case. The third is:
"In order for a foreign corporation to violate article 1314 of the Texas statute, the corporation must transact the business which the corporation was organized and authorized to do under the terms of its charter, and the selling of its own stock in Texas by a foreign corporation does not violate this statute."
The undisputed proof shows that the Morse Timber Company sold to Denman 30 shares of its own stock, and that the business transacted by Denman as agent for such company was the sale of its stock, and that it transacted no other kind of business in Texas. In the case of Security Co. v. Panhandle National Bank, 93 Tex. 575, 57 S.W. 22, Chief Justice Gaines used the following language:
"`Article 745. Hereafter any corporation for pecuniary profit, except as hereinafter provided, organized or created under the laws of any other state, * * * desiring to transact business in this state * * * shall be and the same are hereby required to file with the secretary of state a duly certified copy of its articles of incorporation, and thereupon the secretary of state shall issue to such corporation a permit to transact business in this state.' * * *
"`Article 746. No such corporation can maintain any suit or action, either legal or equitable, in any of the courts of this state upon any demand, whether arising out of contract or tort, unless at the time such contract was made or tort committed, the corporation had filed its articles of incorporation under the provisions of this chapter.' * * *
"The inquiry which first presents itself to our minds is, Has the plaintiff in error done business in this state within the meaning of article 745? The plaintiff in error did not make the original loan. Its first connection with the transaction was the purchase of the bond which had been given by the Wichita Roller Mill Company to the loan and trust company, and the uncontroverted facts show that this transaction was effected in the state of Connecticut by an agent of the latter dealing directly with the plaintiff in error. Very clearly this was not a Texas transaction. The business was done in another state. When, however, the obligation had matured, the plaintiff in error brought suit and obtained a judgment upon it in this state. In the adjustment of its demand, it then entered into a negotiation which resulted in the extension of the debt and the execution of the new security out of which the present controversy arose. The purpose of the statute was probably twofold: One to protect the people of the state from irresponsible foreign corporations by affording the means by which they could readily ascertain such information in reference to them as is ordinarily afforded by their charters; the other to place them upon the same footing as like domestic corporations by requiring them to pay a like fee for a permit to do business, as is required of a domestic company for filing its charter. See Rev. Stats. art. 2439. It is to be presumed, therefore, that the business had in view, in making the requirement, was the ordinary business of the company — the business it was organized to pursue and which its charter empowered it to pursue. Had it been intended to prohibit a foreign corporation from collecting, extending, adjusting, or bringing suit for a debt contracted elsewhere, it would have been easy to have made that intention plain. If it was the purpose of article 745 to deny the corporation the comity which is usually extended throughout the states of the Union of bringing suits in the courts of this state, article 746 was wholly unnecessary. On the other hand, that article shows that such was not the purpose. It in effect merely denies the right of a foreign corporation to bring suit upon any cause of action arising after it had done business in the state without a permit, thus showing that it was regarded that bringing a suit in court was not doing business within the purview of article 745. If bringing suit to collect a debt be not doing business within the meaning of the provision in question, how can the adjustment of a debt be such business? The case of Sullivan v. Sheehan [C. C.] 89 Federal Reporter, 247, was very similar to this both in its facts and as to the law of Minnesota, which was there under construction. In that case the court say: `The Minnesota statutes referred to by counsel, providing for the conditions upon which foreign building and loan associations may transact business in this state, *Page 742 
and prohibiting under penalties the transaction of business by such foreign corporations unless those conditions have been complied with, I think necessarily refers to the ordinary business of such associations. Without complying with those conditions, such foreign corporation would not have the right, by its officers or agents, to come into this state, and there solicit subscriptions for its stock or solicit loans. The same rule applies to any foreign insurance company where similar conditions are required to be complied with before it shall do business in this state; and the business referred to is its ordinary business of insurance. But companies of either of these kinds, if not transacting their ordinary business in this state, and not privileged to transact their ordinary business in this state, not having complied with the conditions of the Minnesota statutes, would not be prohibited, by any proper interpretation of such statute, from investing in the bonds of the state, or of municipal or other corporations of the state, nor from enforcing such bonds. The prohibition of the statute is only against transacting their ordinary peculiar business in this state so long as the statutory conditions are not complied with. The principal question in the case is whether the Chicago association, in contravention of the statute of Minnesota, did business within this state in obtaining the obligations in suit; whether the notes and mortgages in this case were obtained from citizens of this state, by an officer or agent of that company coming into this state, and doing business here; or whether this business was transacted in Chicago, by citizens of Minnesota, who went there to transact the business. I apprehend that the penalties which are denounced by statute against these companies in case they do business with residents of this state apply only to eases where such business is done within the state. Such a statute cannot possibly have an extraterritorial effect, so as to prevent a company of that kind, located in Chicago, from transacting business lawfully with a resident of Minnesota who should go to Chicago and transact business there. There is nothing in that statute that would prevent such a resident of Minnesota from going to Chicago, and there applying and subscribing for and acquiring stock of an association of this kind, and there obtaining, if he could, a loan from a corporation of this kind. I think there is nothing in this statute preventing him from there giving security upon property situated in Minnesota to secure such a loan. The prohibition is aimed at such companies as, by their officers or agents, come into the state of Minnesota — within the territorial limits of the state — to solicit and transact business, and cannot affect business which they perform outside of the state, where they have a right to transact business, merely because such business is transacted with a resident of the state of Minnesota.'
"Several of our states have statutes upon the subject of foreign corporations very like our own. The decisions construing these laws are apparently in conflict; but they are probably reconcilable upon the ground that the language of the several statutes is variant and therefore admits of different constructions. For example, in some states the prohibition is against `doing business,' or, more strongly, `doing any business,' while in others it is against `carrying on business.' It would serve no useful purpose to discuss these decisions here, for the reason that the question whether one transaction constitutes doing business' within the meaning of our statute is not a question which it is necessary to determine in this case. Our opinion is that the plaintiff in error, by coming into the state to adjust and collect its demand, violated no law which placed it out of the pale of that comity, which, in the absence of a statute, permits a foreign corporation to sue in the courts of this state, and that the Court of Civil Appeals erred in reversing the judgment upon that ground."
See Western Sup. Mort. Co. v. U.S., 41 Tex. Civ. App. 350,92 S.W. 989; Commercial Telephone Co. v. Territorial Bank,38 Tex. Civ. App. 192, 86 S.W. 69; Liquid Carbonic Acid Mfg. Co. v. Lewis, 32 Tex. Civ. App. 481, 75 S.W. 47; Ryan Lbr. Co. v. Ball,177 S.W. 226; First National Bank v. Leeper, 121 Mo. App. 688, 97 S.W. 636; Wildwood Pavilion Co. v. Hamilton, 15 Pa.Super.Ct. 389; Galena Mining Smelting Co. v. Frazier, 20 Pa.Super.Ct. 394; Sullivan v. Sheehan (C. C.) 89 F. 247; General Conf. Co. v. Berky, 156 Cal. 466, 105 P. 411.
Therefore, in view of the undisputed proof that the Morse Timber Company, Limited, only sold to Denman 30 shares of its own stock, and that the business transacted by Denman as agent for such company was the sale of its stock, and that it transacted no other kind of business in Texas, we are of opinion that it was not in violation of article 1314 of the Texas statute.
Having considered all the matters complained of, we overrule all the assignments, and the action of trial court is in all things affirmed. *Page 743