Reeves vs. Harper.

No. 10,787.

MRS. JANE C. REEVES VS. E. L. HARPER.

F. L. MAXWELL ET AL. VS. MRS. JANE C. REEVES.

MRS. JANE C. REEVES VS. E. L. HARPER.

(CONSOLIDATED.)

1. Article 136 of our Constitution does not deny to citizens of Louisiana the privilege of borrowing money from foreign corporations, nor does it prohibit such corporations from lending money to our citizens, provided only that such transactions are not made in the course of business carried on by the corporations in the State, without complying with the requirements of the article.

2. In this case the foreign corporation transacted no business in this State. The contract of loan attacked was made in Vicksburg, Miss.; the notes taken were dated at Vicksburg, and payable at San Antonio, Texas; the act of mortgage, though executed in Louisiana by the mortgagor, only ripened into a contract by the acceptance of the mortgagee, which was executed in Vicksburg; the notes were delivered and the money paid to the borrower in person in Vicksburg. In thus transacting, the corporation respected, instead of violating, the prohibition of our Constitution.

APPEAL from the Ninth District Court, Parish of Tensas. Young, J.

## *Wade R. Young* for Mrs. Reeves, Plaintiff and Appellant.

A foreign corporation organized for the purpose of investing money in mortgage securities, which has at one time seven investments in mortgages on lands in this State, running for a period of years, and which, by its agents, attorneys and employés, inspects and values property, examines titles, makes contracts, takes and approves securities, accepts mortgages, looks to the insurance of the property and payment of taxes, and the security and protection of the investment, collects the interest and principal of the debt, and makes every contract and does every act which it could lawfully make and do if it had a place of business in the State, is doing business in the State in the contemplation of Article 236 of the Constitution, although for the purposes of its business in several States it has its place of business in an adjoining State. Cooper Manf'g Co vs. Ferguson, 113 U. S. 727.

The loan broker or mortgage investor who inspects and values the property, examines and approves the title, considers and decides the sufficiency of the security, accepts the mortgage and stipulates that it shall not embrace the immovables by destination, pays the proceeds of the loan, looks to the insurance of the property and payment of the taxes, and the security and protection of the investment, and collects the instalments of the debt and grants indulgence or forecloses for his principal, is the agent of the mortgage company. Sherwood vs. Roundtree, 32 Federal Reporter, 1.

A State may impose upon a foreign corporation, as a condition of coming into or doing business within its territory, any terms, conditions and restrictions it may think proper, that are not repugnant to the Constitution or laws of the United States. Doyle vs. Continental Insurance Co., 4 Otto, 535.

The act of making a loan of money and taking a mortgage to secure it, on lands in Louisiana, by a foreign corporation engaged in the business of loaning money on mortgages of lands in this and other States is a violation of the Constitution of Louisiana, Article 236, providing that no foreign corporation shall do any business in this State without having one or more known places of business and an authorized agent or agents in the State upon whom process may be served, when it has no place of business or agent in the State.

Where such foreign corporation thus lends money and takes a mortgage therefor, the promise of the mortgagor to pay is void. Farrior vs. New England Mortgage Security Co., 88 Ala. 275 (Southern Reporter, 200), Christian et al. vs. American Freehold Land and Mortgage Co., 7 Southern Reporter, 427.

The effect of acts passed in one country, to have effect in another country, is regulated by the laws of the country where such acts are to have effect. Civil Code, Art. 10.

No contract can be enforced in the courts of Louisiana, no matter where made or where to be executed, if it is in violation of the laws of the State or in contravention of the public policy of the government. Kennett vs. Chambers, 14 Howard, 38; Story on Conflict of Laws, Sec. 244.

Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed. Civil Code, Art. 12.

An obligation without a cause, or with a false or unlawful cause, can have no effect. Civil Code, Art. 1893.

It has long been settled that a promise made in consideration of an act which is forbidden by law is void. It will not be questioned that an act forbidden by the Constitution, which is the supreme law, is against law. Craig vs. Missouri, 4 Peters, 436.

*Snyder & Tullis* and *Clinton & Garrett* for Defendants and Appellees:

1.  Article 236, Constitution 1879, is not self-operative, and requires legislative action to carry same into effect, and denouncing penalties for its violation, before contracts made by corporations in violation of its provisions will be declared null.  Laughlin vs. Ice. Co., 35 An. 1186; Groves vs. Peters, 15 Peters, 449; 12 Howard, 79; 5 Howard 138; see also Fairfax vs. Hunter, 7 Cranch; 14 Peters, 122; 79 U. S. 431; 96 U. S. 640; 103 U. S. 443; 8 Otto, 621; Fritz vs. Palmer, 10 Sup. Court Reporter, 93, and authorities there cited.

2.  The foreign corporation having no agent or place of business in this State, which lends money outside the State to a person living in the State, secured by mortgage on property in the State, the whole transaction being consummated outside the State, does not violate Article 236 of the Constitution.  Barrett vs. Dodge, 19 Atlantic Rep. 531; 35 N. J. Law, 285; Hopper vs. Eiland, 21 Ala., 714; 8 Vt. 94; 20 Johns. 288; Pelton vs. Blair, 21 Wallace, 241; 5 Howard, 295; 43 N. W. Rep. 141.  See particularly City of New Orleans vs. Rhenish Westphalian Lloyds, 31 An. 781; City of New Orleans vs. Virginia Fire and Marine Ins. Co., 33 An. 9; Marine Ins. Co. vs. St. Louis Ry. Co. ,41 Fed. Rep. 653; Lamb vs. Bowser, 7 Bissell, 315, 372; State vs. Carl, 43 Ark. 353.  See recent case of State vs. Smith et al., 8 So. Rep. 294.  See also 97 Mass. 89; 33 Iowa, 194; S. C. 11 Am. Rep. 118; 96 Pa. 449; Atlantic Phosphate Co. vs. Ely, 9 S. E. Rep. 170; DeWolf vs. Johnson, 10 Wheaton, 367, 383; Central Trust Co. vs. Burton, 43 N. W. Rep. 141.

3.  The contract between Reeves and the foreign corporation is no longer executory, but has been executed.  Reeves has paid his debt by conveying the mortgaged property to Caldwell.  Conceding for sake of the argument that the contract could have been avoided while executory, the same right does not exist now that it is executed.  Craddock vs. American Freehold Mortgage Co., 7 So. Rep. 196; Sherwood vs. Alvis, 3 So. Rep. 307; Dudley vs. Collier, 87 Ala, 431; 6 So. Rep. 304; Farrior vs. New England Mortgage Co., 7 So. Rep. 200.  See also Fritz vs. Palmer, 10 Sup. Court Rep. 93; see also C. C., Art. 2133.

4.  On the question of fraud, see C. C. 1847.

5.  As to error: Reeves owed a natural obligation, if we concede that he owed no legal obligation to pay the debt.  C. C. 1756, 1757, 1758.  Error as to the person is not sufficient cause to avoid this contract.  C. C. 1834-1836.  The natural obligation was alone sufficient consideration for the contract with Caldwell, and no suit lies to recover what has been paid in compliance with a natural obligation C. C. 1759.

    Even if Reeves made the contract with Caldwell in error, the presumption is that not the error but the natural obligation induced the contract, and it will not be set aside for error.  C. C. 1846, Sec. 1, Sec. 6.  C. C. 2133, 2302, 2303, 2304, 2305, 2306, 2307.

6.  This is a petitory action.  The issue is the title *vel non*.  The causes were consolidated by consent, and evidence as to title submitted by both parties without objection, and the whole controversy as to ownership and possession can be determined in one judgment.  4 M. 625; 1 R. 242; 1 An. 320.

---

The opinion of the court was delivered by

FENNER, J.  The only serious question involved in these consolidated suits is as to the effect of Article 236 of the Constitution of

the State upon certain contracts and transactions which took place between L. N. Reeves, a citizen of Louisiana, and the United States Mortgage Co., a corporation organized and domiciled in Edinburg, Scotland.

The facts are as follows:

In the year 1885 the firm of Francis Smith & Co., was doing business as loan brokers, being that of negociating loans, secured by mortgage or otherwise, for such persons as might apply to them. Their main office was at San Antonio, Texas, and they had a branch office at Vicksburg, Miss., the latter being under the management of A. S. Caldwell, one of the partners. The method of the business was that they received applications to borrow from persons desiring to do so, with a statement of the securities offered. After examining into the securities, if found satisfactory, they took a power of attorney from the proposed borrower, authorizing them to negociate the loan, and agreeing to pay them a certain commission when negotiated. The firm then negotiated the loan with some of their customers who was willing to take it, and on receiving the money they paid it over to the borrower, after first deducting the commission agreed on.

In this case Reeves applied to the firm in Vicksburg, Miss., to negotiate a loan for him, secured by mortgage on his plantation in Louisiana. They sent an agent to Louisiana to inspect and report upon the security. The report being satisfactory they agreed to negotiate the loan and placed it with the United States Mortgage Co., of Scotland. Notes were drawn up, dated at Vicksburg, Miss., and made payable at San Antonio, Texas, were signed by Reeves in Louisiana, but were delivered by him to Smith & Co., in Vicksburg. The mortgage was executed by Reeves in Louisiana, but the act of acceptance thereof by the mortgagee was executed in Vicksburg.

The notes were drawn payable to the order of Holmes Ivory, who was the secretary of the Mortgage Company in Scotland, and he was also named as the mortgagee in the act of mortgage.

The money was paid over to Reeves personally in Vicksburg, or rather to a creditor of Reeves, by his order and in his personal presence.

The notes were payable in annual instalments, and interest on the whole loan was payable annually. Reeves failed to meet the instalments and interest notes due on January 1, 1887, and January 1, 1888, and also failed to pay the taxes on the property.

Caldwell (of Smith & Co.), visited Scotland in the summer of 1887 and found the company naturally much dissatisfied with this invest-ment. He then personally bound himself to hold the company harmless against loss.

Various negotiations took place between him and Reeves for some kind of settlement, but without success. At last, in the spring of 1888, executory process was issued to foreclose the mortgage.

Pending this proceeding an agreement was reached between Cald-well and Reeves by which Caldwell agreed to buy the property at the price of the whole amount due on the mortgage, and then to lease the property to Reeves for the balance of the year at a nominal rent, and to give him the privilege of selling the property at any time during the year for a price exceeding the mortgage debt, and to retain any excess of price which he might obtain.

The property was accordingly conveyed to Caldwell; all the mortgage notes were cancelled and delivered to Reeves; the contract of lease was executed, and Reeves went into possession as tenant, and Caldwell agreed to give him a power of attorney to sell the place during the year at any price exceeding that paid.

No sale was effected. Caldwell subsequently sold two-thirds of the place to Maxwell & Waddill.

Reeves died in the summer of 1888. His widow accepted the community and obtained an order of court placing her in possession of the effects of her husband's succession. She now claims that the contract of loan and mortgage and the sale made in execution thereof are null and void, because made in violation of the prohibition con-tained in Article 136 of the Constitution.

It is useless to state the particular details of the several suits. They were all consolidated and tried together, and the particular issues in each are merged in the general issues of title, which under-lies them all.

On this point we think the reasons of the judge for ignoring sub-ordinate technical issues are quite sufficient.

The Article 136 of the Constitution is as follows: " No foreign corporation shall do any business in this State without having one or more known places of business, and an authorized agent or agents in the State upon whom process may be served."

The case of Mrs. Reeves rests on the following propositions:

1. That the contracts of loan and mortgage, having been made in

violation of the above constitutional prohibition, are, under Articles 11, 1893 and 1895 of our Civil Code, null and void.

2. That the execution of said contracts by the conveyance of the property in satisfaction thereof, having been done by Reeves in ignorance of the fact that he was dealing with a foreign corporation in violation of law, which fact had been fraudulently concealed from him, he was not precluded from claiming the cancellation of said conveyance and reclaiming the property.

We have read with much interest the learned and able brief of counsel for Mrs. Reeves, and have studied all the accessible authorities referred to by him; but we are bound to hold that they are totally inapplicable to this case because of the fact that the prohibition of the Constitution has not been violated.

We have taken pains to give a very full statement of the facts as developed by the evidence, from which it conclusively appears that the Mortgage Company did not, directly or indirectly, transact this business in this State. It simply loaned money to a citizen of Louisiana, who applied to it for such loan in Edinburg through Smith & Co., whom Reeves employed as his agents to obtain the loan for him. The weight of the evidence certainly is that Smith & Co., acted in effecting this loan not as the agent of the Mortgage Company, but as the agent of Reeves.

But conceding that Smith & Co. were the agents of the Mortgage Company, the case is not altered. The agency was established and did its business in Mississippi, not in Louisiana. Reeves dealt with Smith & Co. entirely in Mississippi. He went there to apply for the loan. The notes which he executed were dated Vicksburg, Miss.; they were payable at San Antonio, Texas; they were delivered by Reeves, after signature, to Smith & Co., in Vicksburg; the mortgage, though executed in Louisiana, only ripened into a contract by its acceptance which was passed in Vicksburg; the money was paid to Reeves in Vicksburg. We are at a loss to conceive how this can be called transacting business in Louisiana.

It would be a gross injustice to the people of Louisiana were we to hold that the Constitution denied them the privilege of borrowing money outside of the State from foreign corporations, and of securing such loans by mortgages on their property in this State.

Such a proposition does not bear discussion; nor would it be advanced by counsel. But it is so clear that the above is the precise

character of the transaction here involved, that when this proposition is abandoned no ground of attack is left.

The Constitution of Louisiana can not prevent foreign corporations from transacting business in Mississippi, nor does it prevent our citizens from transacting business there with such corporations. Even if it appeared (which it does not) that this corporation established its agency in Mississippi in order to avoid the prohibition of our Constitution, we could see nothing illegitimate in such a purpose. The Constitution does not prohibit the business, but only the transaction of it in this State. So long as it does not transact business in this State, it would be respecting, not violating, the prohibition of our Constitution, which prohibits nothing but such transaction of business.

We may add that the evidence satisfies us that there was no concealment from Reeves of the fact that his creditor was a foreign corporation. In one letter the creditor is referred to as "the company," and in another as "The Mortgage Co.," and Caldwell testifies that Reeves was fully advised on this point before the final settlement was made. He would be in no case to demand the cancellation of the settlement, and his widow is in no better case.

Judgment affirmed.