SULLIVAN v. SHEEHAN et al.

(Circuit Court, D. Minnesota, Third Division. April 13, 1898.)

1. RECEIVERS—SUIT TO COLLECT ASSETS—JURISDICTION.
    Where a receiver is appointed by a circuit court in a suit against an insolvent corporation, and the same person is appointed ancillary receiver in another circuit, and there brings suit for the collection of assets of the corporation, he is presumed to sue as ancillary receiver, and the court has jurisdiction.

2. FOREIGN CORPORATIONS—STATE LAWS—REGULATING BUSINESS.
    A state statute, prohibiting foreign corporations from doing business in the state except on prescribed conditions, applies only to the carrying on of the ordinary business of such corporations within the state.

3. SAME—BUILDING ASSOCIATIONS—VALIDITY OF CONTRACTS.
    A loan negotiated by a resident of a state on property situated therein from a foreign building association prohibited by the state laws under penalties from doing business in the state, is valid, and the security enforceable, where the contract was made in another state.

4. SAME—PLACE OF CONTRACT.
    A corporation owning realty in Minnesota, upon which it had been refused a loan by an Illinois building association, which was not authorized by the laws of Minnesota to do business in that state, conveyed the property to different grantees, who severally made application to the

building association in Chicago, became stockholders, and procured loans, secured on the stock and the realty in Minnesota. The corporation took an active part in the transactions, and obtained from its grantees the proceeds of the loans. *Held*, that such corporation could not be considered the agent of the building association, and the loans were Illinois contracts, and valid.

This was one of a number of suits brought by W. K. Sullivan, as receiver of the American Building, Loan & Investment Society, to enforce securities executed to such society.

Frederick G. Ingersoll (Lorin C. Collins, William Meade Fletcher, and Harris Richardson, of counsel), for complainant.

Michael & Johnston, O. M. Metcalf, and Henry C. James, for defendants.

LOCHREN, District Judge (orally). I would like in this, as in many other cases, to give more consideration to the questions argued than I am able to during the hearing; but I do not think I had better take this case under advisement. One thing that makes it less necessary to do so is that there seems to be no special dispute with reference to the facts in the case. Counsel are so well agreed upon what these facts are that I am relieved from any careful examination of the testimony.

The first question that arises in the case is the one relating to the jurisdiction of the court. As I understand it, the principal action or proceeding was commenced in the United States circuit court for the Northern district of Illinois against the Chicago company as an insolvent corporation. Mr. Sullivan was appointed receiver, and in this district he was appointed ancillary receiver by this court. It seems to me that, as relates to any litigation arising here, he must be regarded as an officer of this court; and these notes and mortgages, although they may have been in the hands of the receiver who was first appointed in the administration of the estate, would naturally be transferred to the ancillary receiver appointed by this court, for prosecution here. Had the ancillary receiver been some other than Mr. Sullivan,—as might well have happened,—the notes and mortgages would have been transferred to him, and I do not think there would have been any doubt as to the jurisdiction of this court to entertain a suit brought by him to collect these securities. The same thing occurs in railroad foreclosures where the railroad runs through different states. A foreclosure suit is commenced in the circuit court of one of these states, a receiver appointed, and an ancillary receiver will be appointed in any other district through which the railroad runs; and in case of assets of the railroad consisting of securities against persons who live in the district where the ancillary receiver is appointed, although these securities, in the first place, may come into the hands of the original receiver, they will be transferred to the ancillary receiver for the purposes of prosecution or liquidation in his district, the same as any other property that might be found in the jurisdiction where he was appointed; and the court will have the same jurisdiction with reference to them. I think that this court has jurisdiction of this case.

With reference to the legality of the obligations in this case—the notes and mortgages that are sued upon—the general rule is, where contracts are forbidden under penalty, such contracts being ordinarily such as are against good morals or contrary to public policy, the denunciation of a penalty renders them illegal, and for that reason alone they will not be enforced. Where the contract is of itself not objectionable, and the penalty is merely denounced for the purpose of securing the collection of revenue, or some purpose of that kind, the rule is, perhaps, different; but it is not necessary to consider that distinction in this case. The main question in the case is whether this is an Illinois contract or a Minnesota contract. The Minnesota statute referred to by counsel, providing for the conditions upon which foreign building and loan associations may transact business in this state, and prohibiting under penalties the transaction of business by such foreign corporations unless those conditions have been complied with, I think necessarily refers to the ordinary business of such associations. Without complying with those conditions, such foreign corporation would not have the right, by its officers or agents, to come into this state, and there solicit subscriptions for its stock, or solicit loans. The same rule applies to any foreign insurance company where similar conditions are required to be complied with before it shall do business in this state; and the business referred to is its ordinary business of insurance. But companies of either of these kinds, if not transacting their ordinary business in this state, and not privileged to transact their ordinary business in this state, not having complied with these conditions of the Minnesota statutes, would not be prohibited, by any proper interpretation of such statute, from investing in the bonds of the state, or of municipal or other corporations of the state, nor from enforcing such bonds. The prohibition of the statute is only against transacting their ordinary peculiar business in this state so long as the statutory conditions are not complied with.

The principal question in the case is whether the Chicago association, in contravention of the statute of Minnesota, did business within this state in obtaining the obligations in suit; whether the notes and mortgages in this case were obtained from citizens of this state, by an officer or agent of that company coming into this state, and doing business here; or whether this business was transacted in Chicago, by citizens of Minnesota, who went there to transact the business. I apprehend that the penalties which are denounced by statute against these companies in case they do business with residents of this state apply only to cases where such business is done within the state. Such a statute cannot possibly have an extraterritorial effect, so as to prevent a company of that kind, located in Chicago, from transacting business lawfully with a resident of Minnesota who should go to Chicago, and transact the business there. There is nothing in that statute that would prevent such a resident of Minnesota from going to Chicago, and there applying and subscribing for and acquiring stock of an association of this kind, and there obtaining, if he could, a loan from a corporation of this kind. I think there is nothing in this statute preventing him from there giving security upon property

situated in Minnesota, to secure such a loan. The prohibition is aimed at such companies as, by their officers or agents, come into the state of Minnesota—within the territorial limits of the state—to solicit and transact business; and cannot affect business which they perform outside of the state, where they have a right to transact business, merely because such business is transacted with a resident of the state of Minnesota. I have not looked over the evidence in the case, but take the statements of counsel, who do not disagree as to what that evidence is. It appears that there was an association located here in St. Paul, owning real estate in St. Paul Park, and upon a conference with the Chicago company the St. Paul company was informed that it could not subscribe for stock of the Chicago company, nor obtain loans from the Chicago company. In order, perhaps, to accomplish its object indirectly, or for some other reason, this St. Paul company transferred its real estate to different parties, in different parcels, and those parties severally made application at Chicago to obtain the stock of the Chicago company, and their applications were received, and they obtained the stock. They also made applications to obtain loans upon the stock obtained and upon the security of this Minnesota property, which were also received, and the loans made and the notes and mortgages in suit given. It would seem from the statements in the evidence that the St. Paul company actively participated in this matter, and, as a result, finally obtained the money which was borrowed of the Chicago company by these different persons upon their stock and the securities which they gave on the Minnesota property. I do not think it can be fairly gathered from this evidence that the St. Paul company, in this matter, acted as the agent of the Chicago company, but rather that it acted as the agents of the persons to whom it had sold or transferred the lands, and from whom, under some arrangement, it seems it obtained the money which was obtained from the Chicago company. From all that I hardly think it is fair to infer that it acted as the agent of the Chicago company in the transaction; but, rather, that it was acting on the other side. It does not appear that the Chicago company had any agent here, or sent its officers here to obtain these loans. The evidence shows that at some time Marston and some other officers of the Chicago company came here, and that they did look over this property; but it does not appear that while here they solicited or obtained any application for membership, or made, negotiated, or promised any loan. I do not think their merely coming here and looking over the property for the purpose of satisfying themselves as to its value, in case it had been or should be offered as security for the business transacted in Chicago, comes within the inhibition of the statute, or renders, or tends to render, the contracts that were afterwards made, Minnesota contracts. The applications were sent to Chicago, were acted upon and received by the Chicago company there, and the notes and mortgages were sent there, and received and accepted there. It seems to me that these must be regarded as Illinois contracts, and as not coming within the prohibition of the Minnesota statute; and it is admitted that this conclusion eliminates the question of usury. For these reasons, I think judgment should go for the complainant. Ordered accordingly.