SIWOOGANOCK GUARANTY SAVINGS BANK *v.* GEORGE E. CUSHMAN ET UX.

October Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed November 2, 1937.

224

226

228

*Conant & Parker* for the defendants.

*Searles & Graves* for the plaintiff.

SHERBURNE, J. This is a bill to foreclose a mortgage upon land located in St. Johnsbury. The plaintiff is a New Hampshire savings bank located at Lancaster, in that state, and the bill alleges that the mortgage and note were delivered to the plaintiff at Lancaster, and that the contracts and agreements embodied in the note and mortgage were made at Lancaster. The defendants filed a motion to dismiss, a demurrer, and a plea in bar, all of which were overruled subject to exception, and an answer. Facts were found to which exceptions were taken, and decree was entered for the plaintiff, from which the defendants have appealed.

The note and mortgage in suit are dated January 14, 1936. The note is insured by the federal housing administration, and is for $4,600 with interest at 5 per cent, and is payable at the plaintiff bank in monthly installments of $30.43, commencing

March 1, 1936, on the amortization plan, and contains a provision making the entire principal and accrued interest due upon default in a monthly payment for one month. The mortgage, in addition to being conditioned for the payment of the note, provided for the payment of monthly sums to cover cost of mortgage insurance, service charges, taxes and fire insurance. The provisions relative to taxes and insurance read in part as follows:

> "(c) An installment of the taxes and assessments levied or to be levied against the premises covered by this mortgage; and an installment of the premium or premiums that will become due and payable to renew the insurance on the premises covered hereby against loss by fire or such other hazard as may reasonably be required by the mortgagee in amounts, and in a company or companies, satisfactory to the mortgagee. These installments shall be equal respectively to the estimated premium or premiums for such insurance and taxes and assessments next due (as estimated by the mortgagee), less all installments already paid therefor, divided by the number of months that are to elapse before one month prior to the date when such premium or premiums and taxes and assessments will become due. The mortgagee shall hold the monthly payments in trust to pay such premium or premiums and taxes and assessments when due."

In October, 1935, the defendants borrowed $3,550 of the plaintiff evidenced by a promissory note insured in like manner and secured by a mortgage upon the same real estate, both dated October 24, 1935. Before this October loan was made and the mortgage executed the parties had certain negotiations at Lancaster, N. H. At that time Mr. McCarten, treasurer of the plaintiff bank, stated to the defendants in substance that the bank didn't know anything about St. Johnsbury real estate values or conditions, and that the bank would have to have someone to look after its interests, or words to that effect; and upon Mr. Cushman's asking Mr. McCarten if he had in mind

any particular person, Mr. McCarten mentioned the fact that he had had previous dealings with H. Stanwood Brooks, an attorney, in federal land bank matters, that he thought very highly of him and that he would want him; and Mr. McCarten asked the defendants if they would have Mr. Brooks make an appraisal. Later, on July 31, 1935, the plaintiff wrote Mr. Cushman as follows:

> "In accordance with our talk over the telephone this noon, I am enclosing herewith the abstract and the application blanks 'for the insured loan of $4,000 on the Park Street property in the village of St. Johnsbury, Vt., which our trustees voted to take at a meeting last night.
>
> "This vote was taken with the understanding that you would engage Mr. Brooks to see to making the appraisal, etc., of the property which is supposed to be made by the mortgagee. When your application is accepted by the Federal Housing Administration and the loan is accepted and insured by them, we will furnish the money as set forth in the administrative rules and regulations under Title II of the National Housing Act."

Previous to the October loan Brooks made an appraisal of the property and reported his findings to the plaintiff. He also made an abstract of title and delivered it to the plaintiff. The plaintiff accepted Brooks' appraisal in making the loan and relied upon his abstract of title. The October note was signed at St. Johnsbury and the mortgage was there executed, and both were there handed to Brooks and Brooks handed the mortgage to the town clerk of St. Johnsbury for record. Brooks distributed the money from this loan, and in so doing obtained his pay for services and expenses, to which the defendants never made any objection.

Prior to the execution of the note and mortgage of January 14, 1936, defendant George W. Cushman had ascertained from the agents of the federal housing administrator at Burlington, Vt., that the administrator would be willing to insure the plaintiff on an additional mortgage loan on the property in question for the purpose of paying for repairs thereon. After he had ascer-

tained that insurance could be obtained he applied, either at plaintiff's bank in Lancaster or by telephone to McCarten then in the bank, for a new loan for $1,250, and was informed that the application would be granted providing he could procure the loan to be insured. Thereafter a representative of the federal housing administrator called on the defendants at St. Johnsbury, and at his request the defendants signed the first page of a printed application for loan, in which were blanks to be filled out, and which the representative later did fill out without again showing the paper to the defendants. The loan when it came through was for the sum of $4,600, representing $1,050 in money and the cancellation of the prior mortgage for $3,550. The application when introduced as an exhibit contained the following:

"It is understood that such loan, secured by a first lien upon the property described in Exhibit D attached hereto, will be insured by you under the provisions of Title II of the National Housing Act and will be made upon the following terms and conditions:

(1) Interest shall be paid and the principal amount of the loan shall be completely amortized by payment of 239 equal monthly installments of $30.43.

(2) Together with and in addition to the monthly installments of principal and interest above set forth, the undersigned will pay the following:

(a) One-twelfth ($\frac{1}{12}$) of the estimated amount of all charges payable or accruing annually against the property securing the loan for taxes and for ground rents and special assessments, if any (Estimated) $15.56

(b) One-twelfth ($\frac{1}{12}$) of the aggregate amount of all premiums accruing annually with respect to such policies of fire and hazard insurance as may be required for the proper protection of such property (Estimated) $ 1.67

(c) One-twelfth ($\frac{1}{12}$) of the amount of the

service charge, if any, accruing annually, the monthly payment for the first year being $ 1.89

(3) After the loan is insured and as long as such insurance remains in effect (except during the last year of the loan), the undersigned will also pay to you, concurrently with the monthly installment payments hereinabove set forth, one-twelfth ($\frac{1}{12}$) of the amount of the annual mortgage insurance premium payable by you for such insurance $ 1.91

Estimated total monthly payment $51.47''

This application was addressed to the plaintiff and was acted upon by it in making the loan. On its back directed to the plaintiff is an appraisal signed by Brooks, in which he therein states that he has made his examination at the request of the plaintiff bank and that he has no financal interest except as its representative.

On the back of the application, also, the plaintiff bank signed a printed application to the federal housing administrator, Washington, D. C., for insurance upon the proposed loan, in which it entered into certain engagements relative to payments of fees in the event the insurance was granted.

Mr. Brooks attended to certain details about this loan. When defendant Cushman first conferred with Brooks he told him that he would see that he got his pay when the loan was closed. In December, 1935, Brooks carried Mr. Cushman, at the latter's request, to Burlington in order that Mr. Cushman could see about getting his loan approved; in January, 1936, Brooks went to Lancaster to procure the plaintiff's signature to papers needed by the federal housing administration in order to insure the loan, and on January 14, he again drove to Lancaster to have the insurance commitment signed so that it could be sent to Burlington. He prepared the note and mortgage on forms sent him by the federal housing administrator at Burlington, and on January 14, he and his stenographer, Miss Dorothy Merrill, called upon the defendants at their home, where the defendants executed the note and mortgage and handed them to Brooks. He then handed the mortgage to the town clerk for record, and

on January 15 went to Burlington and handed the note into the office of the federal housing administrator, where on January 17 it was endorsed as accepted for insurance, and mailed to the plaintiff at Lancaster, where it was received on January 18. On this last date Brooks carried the mortgage to the plaintiff at Lancaster, in order to obtain the proceeds of the new loan for the defendants and to expedite payment of their obligations to the workmen and others who had made repairs upon the mortgaged real estate. In connection with this business defendant Cushman told Brooks that he was in desperate need of the money, in a hurry, and that he wanted him to do everything possible to get it around as soon as he could.

Upon receipt of the mortgage, the note having already been received, the old note for $3,550 was stamped paid and the old mortgage was discharged, and both were handed to Brooks. Pursuant to instructions from the federal housing administration, checks to the amount of $862.32 in payment of the repair bills, and envelopes for mailing the checks all addressed to persons residing in Vermont, were delivered to Brooks at Lancaster on this occasion, and he mailed the checks to the payees upon his return to St. Johnsbury. At the same time the plaintiff delivered to Brooks its check for $89.31 in payment of his bill against the defendants for services and expenses in procuring the new loan. The chancellor found that this bill was reasonable, but that its payment was unauthorized by the defendants. On January 18, the plaintiff also deducted from the amount of the loan interest due the Lancaster National Bank from defendant Grace E. Cushman to the amount of $52.69, and paid the same to that bank without authority from the defendants.

On January 22, 1936, Brooks wrote the defendant George W. Cushman about the checks for repair bills having been mailed direct to the payees. The repair work was not entirely satisfactory to the defendants, and after the checks had been sent out the plaintiff had notice of the unsatisfactory work and temporarily stopped payment of several checks at defendants' request. These checks were later paid and the defendants now make no claim but that the payments were in amount satisfactory.

On January 24, 1936, the plaintiff wrote both defendants as follows, except for the date and address which we omit:

"Dear Mr. and Mrs. Cushman:

Below you will find a statement of how the $4,600 loan, recently made to you, was disposed of

| | | |
|---|---:|---:|
| Amount of new loan | | $4,600.00 |
| Amount sent by you on first installment of old loan | | 24.48 |
| | | $4,624.48 |
| Old Loan | $3,550.00 | |
| Bills paid as per list of Burlington Bank | 1,006.45 | |
| Interest due on $3,550 note | 40.44 | 4,596.89 |
| Balance | | 27.59 |
| Checks returned for collection | 219.70 | |
| New checks issued | 164.88 | |
| | 54.82 | 54.82 |
| | | 82.41 |
| Less Lancaster National Bank Interest | | 52.59 |
| Our check enclosed to balance | $ | 29.82 |

We are today stopping payment on the following checks:

| | |
|---|---:|
| Number 10760 to Skinner Lumber Co. for | $14.00 |
| Number 10768 to A. Fournier | 37.00 |
| Number 10762 to Roy Holland | 194.30 |
| Number 10770 to Roy Skinner | 40.00 |

Yours very truly,

W. H. McCarten, Treasurer."

With this letter was enclosed the check mentioned, which the defendants endorsed and cashed. It was endorsed by the Federal Reserve Bank, Boston, on January 28, and is perforated with the words "Paid 1-29-36." In reply to this letter defendant Cushman wrote the plaintiff on January 27, 1936, in part as follows:

"While we question the ethics of appropriating money from this loan to satisfy an indebtedness of one of the parties to the Lancaster National Bank, we are willing to withhold action and judgment on this action pending a satisfactory adjustment of the remaining angles.

"As matters now stand, you will note from our statement that we claim a balance now due us of $132.34, which includes the $52.59 amount questioned in the preceding paragraph that may stand temporarily pending developments. This still leaves however a balance due us of $79.65 for which we should have your check at once.

"Until such time as settlement is made on this basis the loan is, so far as we are concerned, incomplete, and we do not accept any obligation under it until the proceeds in full are turned over to us."

In a letter dated February 5, 1936, the plaintiff furnished the defendants with a more detailed statement as follows:

"Disposition of proceeds of $4,600.00 Loan
made to
George W. and Grace E. Cushman

| | | |
|---|---|---|
| Amount of Loan | | $4,600.00 |
| Less Old Loan paid | | 3,550.00 |
| | | $1,050.00 |
| " | Balance of interest due on old loan | 15.96 |
| | | $1,034.04 |
| " | Interest paid Lancaster National Bank | 52.59 |
| | | $ 981.45 |
| " | Bills paid according to FHA list | 951.63 |
| | Our check to balance account | $ 29.82 |

Bills paid as per FHA list:

| | |
|---|---|
| Clyde Barber | $156.40 |
| Skinner Lumber Co. | 14.00 |

| | |
|---|---|
| R. C. Holland | 194.38 |
| Philip Lamere | 29.00 |
| Lester Smith | 3.00 |
| H. J. Dunbar | 104.50 |
| Alphonse Fournier | 37.00 |
| Swan Const. Co. | 19.56 |
| R. D. Skinner | 40.00 |
| Gustave Goyer | 3.90 |
| C. A. Smith | 2.40 |
| Charles Emery | 11.00 |
| M. E. Waldo | 12.30· |
| Reliance Elect. Co. | 70.00 |
| H: Stanwood Brooks | 89.31 |
| Peck Hardware Co. | 72.73 |
| Frank Wheelock | 41.75 |
| John Morency | 35.40 |
| E. G. Ouimet | 15.00 |
| | $951.63'' |

This item of $951.63 equals the item of $1,006.45 mentioned in the letter of January 24, less the item therein of $54.82.

After January 27, 1936, neither defendant wrote or communicated to the plaintiff prior to the commencement of these proceedings. Prior to the institution of this suit the plaintiff demanded payment of the note by letter mailed at Lancaster.

The chancellor found that nothing had been paid upon the note and mortgage unless the sums of $52.59 and $89.31 should be applied thereon. In making up the total amount due the plaintiff the chancellor found, among other things, that there were due for taxes eight monthly installments of $15.56 each as set forth in defendants' application for the loan, and found that defendants had never paid anything. Decree was entered for the full amount without any deduction.

The findings show that the plaintiff has taken a number of other loans secured by mortgages upon Vermont land; that it has accepted a quit-claim deed in satisfaction of one mortgage, and has since sold part of the land, and paid taxes upon a part; that it has cut and sold hay from premises which it was obliged

to take in satisfaction of a mortgage debt; and that these various mortgage loans were made at the plaintiff's banking rooms in New Hampshire, or at least there was no evidence to the contrary.

Before the note and mortgage in suit were signed the plaintiff had told defendant George W. Cushman that Mr. Brooks was satisfactory in every way. Before the mortgage was signed Brooks checked the title and this check was relied upon by the plaintiff as to title.

We have stated the substance of the chancellor's findings in so far as material to matters raised by the defendants' brief. Defendants took certain exceptions to the findings and excepted to the chancellor's failure to find in certain instances.

■ The first exception is to the finding that "Mr. Cushman was informed by the plaintiff's treasurer that his application would be granted provided he could procure the loan to be insured by the Federal Housing Administration," on the ground that it is without evidence. Although the plaintiff had to sign the application for the insurance the evidence shows that the defendants made all the preliminary arrangements and told McCarten that the federal housing administration was willing to insure the loan if acceptable to the bank, and McCarten replied that if it was insured it was acceptable. The exception is without merit.

■ The second exception is to the finding that "attorney Brooks carried the mortgage to the plaintiff's banking rooms in Lancaster in order to obtain the proceeds of the new loan for the defendants, and to expedite payment of their obligations to the workmen and others who had made repairs upon the mortgaged real estate," on the ground that it is not warranted by the evidence. The transcript amply supports this finding.

■ The third exception is to that part of finding 12 wherein it is found that part of the proceeds of the loan were applied to the payment of Brooks' bill "there presented against the defendants." The chancellor expressly found that Brooks never presented his bill to the defendants and never demanded payment from them. The finding excepted to means no more than that the bill was against the defendants and was presented to the bank. No error appears.

■ The fourth exception is to finding 13 wherein it is found that the letter written by the bank to defendants on

January 24, 1936, showed how the proceeds of the loan of $4,600 were disposed of, the objection being that the letter did not show the payment of Brooks' bill out of the proceeds. It is true that this letter does not mention the payment of Brooks' bill, but the defendants were informed of the total amount of money actually disbursed. Had the statement in the letter of February 5, 1936, been sent on January 24, it would have been clearer. However, we think that letter sufficient to have put the defendants upon inquiry before cashing their check for $29.82, and that the finding, if erroneous, is harmless in this respect.

The seventh exception is to finding 68 setting forth the letter of July 31, 1935, wherein the plaintiff advised defendant Cushman that the trustees of the bank had approved a loan of $4,000 on the property, because immaterial and irrelevant, and on the ground that the matters set forth in the letter are immaterial and irrelevant to all phases of the present case. This finding is proper as showing a part of the history of the dealings between the parties and as showing what relationship Brooks subsequently had to the respective parties.

The eighth exception is to finding 70, wherein the chancellor finds the substance of services performed by Brooks. It is objected to because it does not include services for making an appraisal and making an abstract and reporting them to the plaintiff. Such services were trivial. The two loans were less than three months apart. For the first loan Brooks appraised the property and made an abstract of title. All he did for the second loan was to make a new appraisal and check the title subsequent to his abstract. Objection is also made that the findings state that he took the final loan papers to Burlington on January 15, whereas he only took the note. It does not appear that the defendants are harmed by these findings.

The tenth exception is to finding 95 that the various mortgage loans to persons other than the defendants on Vermont real estate were made at its banking rooms in New Hampshire, or at least there was no evidence *contra*. The defendants admit that McCarten testified that it was in plaintiff's bank that the mortgages and money were turned over, yet they say that the mortgages were recorded in Vermont and that the record of these instruments is *prima facie* evidence of their delivery in Vermont. In support of these propositions they cite *Walsh* v. *Insurance Company*, 54 Vt. 351, 360, and *Pitkin's Admr.* v.

*Montpelier,* 85 Vt. 467, 474, 82 Atl. 671, Ann. Cas. 1914B, 500. These cases decide nothing of the kind. The former only holds that the record is *prima facie* evidence of delivery. The latter does not go that far even. It could not very well for the deed involved was never recorded, nor ever filed for record. More-over, see *Tyrrell* v. *Prudential Ins. Co. of America,* 109 Vt. 6, 192 Atl. 184, as to the scope and effect of legal presumptions when rebutting evidence is introduced.

■ The eleventh exception is to finding 96, wherein it is found that the plaintiff paid out of the proceeds of the second loan the various parties that it was instructed to pay by the federal housing administration, because there was no evidence that it instructed the plaintiff to pay the interest charges to the Lancaster National Bank or to pay Brooks' bill. The finding is misconstrued by the defendants in this regard. It does not refer to the two items.

■ The twelfth exception is to finding 97, that defendants never made any objection to the payment of Brooks' fees in connection with the first loan, on the ground that the finding is irrelevant and immaterial, and on the further ground that it is not a fair statement, the evidence being uncontradicted that de-fendants never knew how this bill in connection with the October loan was paid and did not know the amount until June, 1936. Plaintiff's Ex. 3 and attached sheets Exs. 3a, 3b and 3c, refute this claim. The exhibit is a statement signed and sworn to by Mr. Cushman on December 20, 1935, to which is attached in his handwriting Exs. 3b and 3c, a statement of expenditures. On Ex. 3c is listed "Fees and legal expenses paid $79.75." This statement was mailed to Burlington at that time by Mr. Cushman in connection with his negotiations for insurance upon the second loan. The finding has some tendency to show by whom Brooks was then employed.

■ The thirteenth exception is to that part of finding 11 that "the plaintiff bank, through its cashier, then stamped as paid, the note which it held for the former loan dated October 24, 1935, and at the same time discharged the mortgage dated October 24, 1935, which it had as security for the former loan, and handed both the discharged mortgage and the old paid note to Mr. Brooks at the Bank's place of business in Lancaster, New Hampshire." The objection is that the mortgage could not be

discharged by simply writing upon it, and that under P. L. 2617 such writing does not constitute a discharge until recorded on the margin of the record of the mortgage. As between the parties the surrender to Brooks as defendants' agent of the cancelled note and the cancelled mortgage and his acceptance of the same constituted a discharge. If defendants wanted the plaintiff to have the discharge recorded, it was up to them under P. L. 2619 to tender to the plaintiff its reasonable charges, which would include the recording fee for the town clerk.

 The sixteenth exception is to finding 61. The chancellor found that above the names of Brooks and Miss Merrill where they signed as witnesses to the mortgage appeared the words "Signed, Sealed and Delivered." The objection is that the words "in presence of" are omitted. The eighteenth exception is to the failure of the chancellor to find that these words appeared, as requested. We are unable to see how the omission can harm the defendants.

 The fourteenth exception is to that part of finding 71 which reads "This list was mailed or delivered by Mr. Cushman to the Federal Housing Administrator and is the list transmitted by Frederick C. Hinchey, executive assistant of the federal housing administrator, to the plaintiff bank," on the ground that the finding is without evidence and is not warranted by the evidence. Defendants admit that there was evidence that the bank had received instructions from the federal housing administration as to how checks were to be made and with reference to payment of bills, and that these instructions were in a letter in which Pls. Exs. 3, 3a, 3b and 3c were enclosed. The letter itself was excluded as an exhibit, and there is no evidence that Hinchey wrote it or that the enclosures were transmitted by him. However, on January 13, 1936, Hinchey wrote a letter to Brooks and sent a copy to the plaintiff bank, in which is the following paragraph: "It is further understood that the additional funds obtained by this loan will be held in trust and used to pay all outstanding obligations contracted in connection with the property." The fact is that Exs. 3, 3a, 3b and 3c were prepared by Cushman and sent to Burlington, as we have before stated, and from there they were forwarded to the plaintiff and later acted upon by it. The error, if any, is harmless.

 The fifteenth exception is to finding 83 which reads: "That the plaintiff has cut and sold hay from premises in Ver-

mont which it was obliged to take in satisfaction of a mortgage debt.'' The word ''obliged'' is objected to. Whether the plaintiff was ''obliged'' is of no particular consequence. The fact is that it did take such premises in satisfaction of mortgage debts in default.

The seventeenth exception is to the refusal of the chancellor to find as requested that when the defendants handed the note and mortgage to Brooks on January 14, 1936, they permanently parted with the possession of same with the intent, so far as the evidence discloses, that the mortgage should take effect as such immediately, on the ground that the refusal is not warranted by the evidence. It is sufficient to point out that the defendants knew that the note and mortgage could not be effective until the loan could be insured and the note and mortgage then delivered to the plaintiff bank.

In the fifth exception several objections are raised to finding 17. It is objected that the findings that certain amounts are due are objectionable because they do not allow for credits claimed by the defendants to be resulting from the misapplication of the items of $52.59 for interest and $89.31 paid to Brooks. Exceptions 20, 21, 22, 24, 25 and 28 are to the failure to find certain facts as requested so as to make out that the sums due on the note and mortgage on June 2, 1936, the date of the petition, are less than the above sums claimed to have been misapplied and the interest upon same to that date. The fifth exception also objected to the finding wherein it was found that ''* * * under the covenant in the mortgage with respect to an installment of the taxes and assessments levied or to be levied against the premises covered by this mortgage, eight monthly installments of fifteen dollars and fifty-six cents ($15.56) each, as set forth in defendant's application for a loan * * *, amounting to one hundred twenty-four dollars and forty-eight cents ($124.48)'' were due, because there was no evidence presented that any valid taxes had been imposed or levied, and the covenant in the mortgage was to pay ''An installment of the taxes and assessments levied or to be levied against the premises covered by this mortgage,'' and that the mortgage required the amount of the installments to be estimated by the plaintiff, but this was actually done by an agent of the federal housing administration. This exception also objected to that part of this finding that ''the defendants have

never directed plaintiff to apply thereto" either of the above sums "claimed by them to have been wrongfully deducted from the proceeds of the loan by the bank, or any part of the sums so deducted," on the ground that the finding is without evidence and not warranted by the evidence. This last part of the finding is sustained by the evidence. As to the claim that the installments were estimated by an agent of the federal housing administration, they are also the estimates of the defendants, as when they signed the application in blank they authorized the agent to fill out the blanks under the rule that "If a party to an instrument intrusts it to another for use, with blanks not filled out, such instrument so delivered carries on its face an implied authority to fill up the blanks necessary to perfect the same with matter in general conformity to the character of the instrument, and as between such party and innocent third persons, the person to whom the instrument is so intrusted must be deemed the agent of the party who committed the instrument to his custody. While the most common application of this rule arises with reference to the filling of blanks in bills and notes (see *Michigan Ins. Co.* v. *Leavenworth*, 30 Vt. 11, 20), it is not confined to such instruments, but is also applicable to all simple contracts in writing." 2 C. J. 1243, 1244. See also 3 C. J. S. 976. The plaintiff bank had a right to accept these estimates and by accepting the defendants' application for a loan adopted and made them its own.

If these estimates for taxes are added to defendants' figures an unpaid balance is shown upon May 1, 1936, even though the defendants should be credited with the two disputed items and interest thereon. We think, however, that the acceptance and cashing by defendants of plaintiff's check for $29.82, under the circumstances which we have narrated, constitutes an accord and satisfaction.

Our well settled rule is that, if one, who has a disputed or unliquidated claim against another, accepts and retains a less amount than he claims is due, which is offered by the other in full settlement of such claim, it operates as an accord and satisfaction of such claim, and further controversy respecting it is ended. *Harrington* v. *Mutual Benefit Health & Accident Ass'n*, 108 Vt. 48, 182 Atl. 179; *Keefe* v. *Fraternal Protective Ins. Co.*, 107 Vt. 99, 102, 176 Atl. 305; *Dow* v. *A. C.*

*Cheney Piano Action Co.*, 104 Vt. 350, 357, 160 Atl. 274, and cases cited. Defendants, however, insist that as the amount of the proceeds of the loan was neither disputed nor unliquidated this case does not come within this rule. Even though a claim is certain and undisputed, a dispute as to a right of set-off or counterclaim renders the claim as a whole a disputed claim, as the claim should be treated as a single one, consisting of the undisputed part and the set-off or counterclaim. Thus in *Tanner* v. *Merrill*, 108 Mich. 58, 65 N. W. 664, 665, 31 L. R. A. 171, 62 A. S. R. 687, it is said: ''While the controversy was over the set-off, it is plain that the amount due the plaintiff was in dispute.'' In *Stanley-Thompson Liquor Co.* v. *Southern Colorado Mercantile Co.*, 65 Colo. 587, 178 Pac. 577, 4 A. L.,R. 471, it is said: ''Until the amount of the counterclaim was determined, it was uncertain what the defendant's debt to the plaintiff was.'' See, also; *Hotel Randolph Co.* v. *Watrous Co.*, 144 Wash. 215, 257 Pac. 629, 53 A. L. R. 766; *Hull* v. *Johnson*, 22 R. I. 66, 46 Atl. 182; *Ostander* v. *Scott*, 161 Ill. 339, 43 N. E. 1089; *Hettrick Mfg. Co.* v. *Barish*, 120 Misc. 673, 199 N. Y. S. 755, affirmed without opinion in 209 App. Div. 807, 204 N. Y. S. 915; *Conn. River Lumber Co.* v. *Brown*, 68 Vt. 239; annotations, 4 A. L. R. 474, and 53 A. L. R. 768; 1 Am. Jur. 250; 1 C. J. S. 520.

Defendants also insist that plaintiff's check was not accepted and retained in response to an offer of full settlement. In making its offer the plaintiff did not have to use any set language. All that was required was that the offer be such that the defendants must have understood that if they accepted and cashed the check, they were bound to understand that they took it in full settlement. *Harrington* v. *Mutual Benefit Health & Accident Ass'n, supra; Drown's Guardian* v. *Chesley's Estate*, 92 Vt. 19, 25, 102 Atl. 102, L. R. A. 1918A, 1056; *Van Dyke* v. *Wilder & Co.*, 66 Vt. 579, 29 Atl. 1016; *Preston* v. *Grant*, 34 Vt. 201. Defendants could not escape the legal effect of the acceptance of the check by their letter of protest. *Murphy* v. *Little*, 69 Vt. 261, 37 Atl. 968. Plaintiff's letter of January 24, 1936, shows disbursements of the entire amount of the loan except for the amount of the check ''enclosed to balance.'' As we have said, the letter did not mention the payment of the Brooks bill, but it did show the total amount disbursed. It might have been clearer, but in view of the showing of the totals disbursed

we think that defendants should have understood that if they accepted the check they were bound to take it in full settlement, and so hold in support of the finding that nothing had been paid, and in support of the decree.

The twenty-third exception is to the refusal to find as requested that the plaintiff claimed nothing due with respect to fire insurance. As the findings do not find anything due upon the fire insurance covenant in arriving at the amount due, the defendants are not harmed.

The remaining exceptions are to the refusal of requests which call for conclusions, mostly of law. As the findings made are very exhaustive and detailed as to the basic facts upon which such conclusions are based, it was unnecessary for the chancellor to incorporate conclusions into the findings. *Labor* v. *Carpenter*, 102 Vt. 418, 422, 148 Atl. 867; *Allen* v. *Travelers Indemnity Co.*, 108 Vt. 317, 187 Atl. 512. Moreover, many of the conclusions asked for are inconsistent with the findings made.

Under our rules that it will be assumed on appeal that the chancellor inferred from the facts found any fact fairly inferable therefrom and necessary to support the decree (*Vt. Shade Roller Co.* v. *Burlington Traction Co.*, 102 Vt. 489, 498, 150 Atl. 138, and cases cited), and that every reasonable intendment is in support of the decree, and we will assume that the chancellor drew such inferences in favor of the prevailing party (*Travelers Ins. Co.* v. *Gebo*, 106 Vt. 155, 162, 170 Atl. 917, and cases cited), we think that the following may be fairly and reasonably inferred from the findings made, and will assume that the chancellor so inferred:

1. That Brooks was the defendants' agent for the January loan, except perhaps in making the appraisal and certifying to the title.

2. Although the plaintiff signed the application for the mortgage insurance and a commitment, it is apparent that the defendants acting for themselves and through Brooks, as their agent, were the real procurers of the insurance upon the loan by the federal housing administrator. Even the application and commitment were carried to Lancaster by Brooks while acting for the defendants in order to get the plaintiff's signature.

3. The mortgage and note were delivered to the plaintiff at Lancaster and there accepted. It follows that until such accept-

ance the note and mortgage did not become legal obligations; for it is a common principle that the place of a contract is where the last act essential to its completion was done. *Bishop & Co.* v. *Thompson*, 99 Vt. 17, 21, 130 Atl. 701, and authorities cited. The note and mortgage were therefore made in the state of New Hampshire (*Bishop & Co.* v. *Thompson, supra*, and cases cited), and by the terms thereof they were to be performed there.

The defendants insist that the decree cannot be supported by any inferences in its favor that the note and mortgage were delivered in New Hampshire, or that Brooks was the agent of the defendants at the time they handed him the papers, or that he was employed by the defendants in reference to the loan, because the plaintiff requested such findings and the chancellor refused so to find, citing *Dunnett* v. *Shields & Conant*, 97 Vt. 419, 429, 123 Atl. 626, and *Vt. Shade Roller Co.* v. *Burlington Traction Co.*, 103 Vt. 293, 300, 153 Atl. 563. It should be pointed out on the other hand that the defendants' requests for findings to the opposite tenor were also refused. Evidently the chancellor planned simply to find the basic facts and let his conclusions therefrom be inferred from his decree. Under such circumstances the authorities cited by the defendants are not in point, nor do they apply to conclusions of law in any event.

At the close of the evidence the defendants moved to dismiss. The motion was denied subject to exception. Since it was the duty of the chancellor to find and state the facts, which, of course, he had not done at that time, the motion was inopportune, and was properly denied. *Federal Land Bank* v. *Flanders*, 105 Vt. 204, 207, 164 Atl. 539; *Kennedy* v. *Robinson*, 104 Vt. 374, 377, 160 Atl. 170; *Raithel* v. *Hall*, 99 Vt. 65, 69, 130 Atl. 749.

The defendants raise the question whether a foreign savings bank may institute and maintain the foreclosure of such a mortgage of Vermont real estate, delivered outside the State and securing a loan made outside the State to residents thereof, when under such mortgage rents, issues and profits are conveyed to the foreign savings bank and active duties are imposed upon it with reference to funds to be paid by the mortgagors for purposes other than the retirement of the principal debt, that is, for the protection of the mortgage security. They rely upon P. L. 5992 that "A foreign savings bank shall not do business in this

state," and P. L. 5988 that "A foreign corporation shall not maintain an action in this state upon a contract made by it in this state if, at the time of making such contract, it was doing business in this state without lawful authority."

 Where interstate commerce is not directly affected, a state may forbid foreign corporations from acquiring land within her borders, although the conveyances were executed and delivered in another state. *Munday* v. *Wisconsin Trust Co.,* 252 U. S. 499, 64 L. ed. 684, 40 Sup. Ct. 365.

 By comity, where not expressly forbidden, foreign corporations are allowed to sue and collect their debts, to levy their executions upon land, and take land in payment of debts, when mortgaged or otherwise. *State* v. *Boston, Concord & Montreal R. R. Co.,* 25 Vt. 433, 443; *American Mutual Life Ins. Co.* v. *Owen,* 15 Gray (Mass.) 491.

 The quoted portions of P. L. 5992 and P. L. 5988 are traced to sections 7 and 13 of No. 59 of the Acts of 1915. They are sufficiently cognate to be *in pari materia,* and they are to be construed with reference to each other as parts of one system, and the legislative intent, thus ascertained, must be given effect. *Doubleday* v. *Stockbridge,* 109 Vt. 167, 194 Atl. 462; *Belfore* v. *State Highway Department,* 108 Vt. 396, 187 Atl. 797; *Grand Lodge of Vermont* v. *City of Burlington,* 104 Vt. 515, 519, 162 Atl. 368. When this is done it is obvious that while the Legislature intended to prohibit foreign savings banks from doing business in this State, it did not intend to prevent the enforcement of the contracts of such banks other than those made in this State.

 It is not doing business in the State to make outside the State a loan on security of land within the State. *Sullivan* v. *Sheehan,* 89 Fed. 247; *Martin* v. *Bankers' Trust Co.,* 18 Ariz. 55, 156 Pac. 87, Ann. Cas. 1918E, 1240; *Monaghan & Murphy Bank* v. *Davis,* 27 Ariz. 523, 234 Pac. 818; *Scruggs* v. *Scottish Mortgage Co.,* 54 Ark. 566, 16 S. W. 563; *Security Trust Co.* v. *Martin,* 178 Ark. 518, 12 S. W. (2d) 870; *People's Building Loan & Savings Ass'n* v. *Berlin,* 201 Pa. 1, 50 Atl. 308, 88 A. S. R. 764; *Neal* v. *New South Building & Loan Ass'n,* 100 Tenn. 607, 46 S. W. 755; *Burlington Savings Bank* v. *Grayson,* 43 Ida. 654, 254 Pac. 215; *Reeves* v. *Harper,* 43 La. Ann. 516, 9 So. 104; 2 Beale Conflict of Laws, 846; 9 Fletcher Cyc. Cor-

porations, 9987, § 5929; 14a C. J. 1281, 1282. The defendants cite as showing that the lending of money outside the State on the security of land within the State is doing business within the State, the case of *Chattanooga National Building & Loan Ass'n* v. *Denson*, 189 U. S. 408, 47 L. ed. 870, 23 Sup. Ct. 630, involving the Alabama Law. In that case, however, the defendant was solicited by an agent of the plaintiff, and the note and mortgage, and the check for the amount of the loan were delivered, all in Alabama. The opinion refers to a number of Alabama decisions as constituting an interpretation of the constitutional and statutory provisions of that state, and decided in accordance therewith. In this connection attention is called to *American Building, Loan & Tontine Savings* v. *Haley*, 132 Ala. 135, 31 So. 88, a later case than any cited in that opinion, which holds that there is no law which prohibits a foreign corporation to make loans in the course of business done in its home state, on security of lands in Alabama. As we have cited an Idaho case, we also refer to *John Hancock Mutual Life Ins. Co.* v. *Girard* (Ida.), 64 Pac. (2d) 254, cited by defendants. There the plaintiff had purchased mortgages from a mortgage company qualified to do business within the state under an agreement whereby this company was to secure loans for the plaintiff and transfer them to it, and was to perform other duties in looking after mortgaged land. It was held that the company's acts constituted doing business by the plaintiff under the law of that state. This case refers to *Continental Assurance Co.* v. *Ihler*, 53 Ida. 612, 26 Pac. (2d) 792, and says if the facts were the same as there it would hold that it was not doing business in the state. This last case says: "The purchase, beyond the borders of Idaho, by a foreign corporation, of promissory notes, the payment of which is secured by mortgages of land in this state, the collection of interest accruing on indebtedness evidenced and secured thereby, and the commencement and maintenance of suits to collect said indebtedness, is not doing business in Idaho within the meaning of the statutes above referred to."

Even though the plaintiff was, and had been, doing some business in Vermont as claimed by the defendants, which we need not decide, it was not so doing business, when, in the state of its domicile, it accepted the note to be paid there and the mortgage securing it. Consequently as to that transaction it was

not subject to P. L. 5988 and P. L. 5992. *Bishop & Co.* v. *Thompson, supra,* 99 Vt. 17, 23, 130 Atl. 701. As the note and mortgage were a New Hampshire contract the question of the authority of the plaintiff to transact business in this State need not be considered. *Hartford, etc., Ins. Co.* v. *Lasher Stocking Co.,* 66 Vt. 439, 446, 29 Atl. 629, 44 A. S. R. 859; *Baker* v. *Spaulding Bros.,* 71 Vt. 169, 42 Atl. 982. In our view of the matter we need not consider whether having the property appraised, the title searched, or even procuring mortgage insurance from the federal housing administration constituted doing business in this State, as that question is immaterial under the foregoing statement of the law. The fact that the plaintiff had taken other mortgages and the circumstances regarding their disposition was likewise immaterial.

So far as "the rents, issues and profits" are concerned, these words appear in the printed part of the mortgage immediately after the typewritten description of the real estate, where it reads:

> "including all buildings and improvements thereon (or that may hereafter be erected thereon); together with the hereditaments and appurtenances and all other rights thereunto belonging, or in anywise now or hereafter appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all plumbing, heating and lighting fixtures and equipment now or hereafter attached to or used in connection with said premises."

The premises are occupied by the defendants and there are no rents, issues and profits, but if there were such we see no objection thereto.

Nor do we see how that collecting in New Hampshire sums in trust to pay taxes, fire insurance premiums and assessments contemplates doing business in Vermont any more than contracting in another state to carry a fire insurance risk upon property in this State. *Baker* v. *Spaulding Bros., supra; State* v. *International Paper Co.,* 96 Vt. 506, 120 Atl. 900, 32 A. L. R. 632.

Defendants cite P. L. 5986 that "A foreign corporation shall not have authority to do any acts in this state except such acts as a similar domestic corporation might lawfully do." This does not affect the situation. It is not shown why a Vermont savings bank might not foreclose such a mortgage.

Attention is also called to P. L. 5984 giving a foreign corporation as trustee the right to acquire a mortgage, and to P. L. 5985, which reads:

> "Whenever a foreign corporation acting as trustee under a mortgage or trust indenture takes any action in this state with reference thereto or to the property covered thereby, such corporation shall be doing business in this state as a foreign corporation and shall be subject in all respects to the provisions of law relating to foreign corporations."

Defendants argue that this provision applied to the plaintiff as the mortgage provides for the collection of monthly payments to be held in trust to pay taxes, etc., when due. It is obvious that these sections of the statute apply to trust mortgages to secure bondholders. This plaintiff did not take the mortgage as a trustee.

Defendants cite P. L. 886 and No. 40 of the Acts of 1937 which give definitions of doing business for certain special purposes. They do not forbid actions in this State upon contracts made in another state, nor do they otherwise apply to this situation.

*Decree affirmed with costs, and cause remanded. Let a new time of redemption be fixed*